## Staunton.

### GARRETT AND OTHERS v. RUTHERFORD AND OTHERS.

September, 10, 1908.

Absent, Keith, P.

1. EXPRESS TRUST IN LAND—*Parol Evidence.*—If an express trust affecting real estate can be established by parol evidence (which is an open question in this State) the declaration must be unequivocal and explicit, and established by clear and convincing testimony. Testimony of witnesses as to verbal admissions made by a husband more than thirty years previous to the time of their testifying, and as to casual conversations between husband and wife had many years ago, is not sufficient to establish a trust in favor of the wife. The danger of relying upon such evidence is enhanced where, as in this case, the testimony of both husband and wife, the principal actors in the occurrence, is lost.

Appeal from a decree of the Circuit Court of Lee county. Decree for defendants in the cross-bill. Complainants in said bill appeal.

*Affirmed.*

The opinion states the case.

*Duncan & Crindlin* and *B. H. Sewell,* for the appellants.

*M. G. Ely* and *Pennington Bros.,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

We need only concern ourselves to consider the question raised by appellants in their cross-bill, in which, as children and heirs at law of Susan C. Rutherford, deceased, they seek to impress the land in controversy, known as the Baylor farm, with an express parol trust for their benefit.

They rest their claim upon the allegations that in 1871 their parents were married in the State of Kentucky, and shortly thereafter removed to Lee county, Virginia; that in 1872 their father, George R. Rutherford, purchased the Baylor farm with money derived from his wife, and that in pursuance of a distinct and positive agreement between them it was to be her property and the legal title taken in her name; that they occupied the farm jointly as a home, and in 1887 the wife died in the belief that it had been conveyed to her in accordance with their previous understanding.

At the time of the filing of the cross-bill, George R. Rutherford had been convicted of a felony, and was confined in the State penitentiary; but his committee, by answer, denied the existence of the trust, or that the plaintiffs had any interest whatever in the property.

In point of fact the purchase was made by George R. Rutherford in his own name, and the deed to him was promptly admitted to record; and after the death of his first wife, he from time to time encumbered the property by deeds of trust to secure his individual indebtedness, and these deeds still remain unsatisfied.

The plaintiffs undertook to prove the agreement upon which their contention is founded by a single witness, A. E. Rutherford, who deposed on that point as follows: "I had a conversation with George R. Rutherford and his wife shortly after they came to Virginia  *  *  *  *  *  . In that conversation, Mrs. Rutherford said that she had the money to buy a farm with. George was present and had the same talk that she did.   In said conversation they said they had selected the Baylor farm, and they afterwards bought.   They told me it was the agreement between them before they left Kentucky to come here and buy a farm with her money and for her benefit."

Other witnesses were also examined, *pro* and *con,* giving with more or less circumstantiality their recollections of casual conversations had with the parties, or in their presence, subse-

quent to the purchase and conveyance, touching the owner-
ship of the farm; and from a decree dismissing the cross-bill,
this appeal was allowed.

In Greenleaf on Evidence (14th ed.), section 200, the
author, in discussing the probative value of such evidence, says:
"With respect to all *verbal admissions,* it may be observed that
they ought to be *received with great caution.* The evidence,
consisting as it does in the mere repetition of oral statements,
is subject to much imperfection and mistake; the party himself
being misinformed, or not having clearly expressed his own
meaning, or the witness having misunderstood him. It fre-
quently happens, also, that the witness, by unintentionally
altering a few of the expressions really used, gives an effect to
the statement completely at variance with what the party actu-
ally did say."

The significance of these observations is accentuated in this
instance by the circumstance that more than thirty years had
elapsed since the alleged conversation took place, when the im-
pairment of memory by lapse of time rendered it practically
impossible for witnesses to bear in mind and repeat, with any
degree of accuracy, the exact language of loose conferences in
relation to a transaction in which they had no personal interest.

Of that species of testimony, Snyder, Judge, in *Vangilder* v.
*Hoffman,* 22 W. Va. 1, 11, 12, affirms: "The whole claim of
the plaintiff rests upon the mere verbal statement of the appel-
lant, gathered by witnesses from casual conversations. Evi-
dence consisting of the mere repetition of oral statements—
and especially when made to and proved by persons having no
interest in the subject of the conversation—is of the weakest
and most unreliable character, and should be received with the
greatest caution. And unless corroborated by other proof, or
aided by surrounding circumstances, it must be held insufficient
to establish any material fact." Citing *Horner* v. *Speed,* 2
P. & H. 616. See also, *Phelps* v. *Seely,* 22 Gratt. (Va. R.
Ann.) 573, and authorities in foot note to that case.

In *Lench* v. *Lench,* 10 Vesey Jr.'s R. 511, Sir William Grant, the Master of the Rolls, at page 517—commenting upon the insufficiency of the evidence to establish a parol declaration of trust on behalf of the wife, upon the theory that the property was purchased by the husband with *trust funds* belonging to the wife, and in pursuance of an engagement between them to that effect—observes: "Then how is the fact made out? There is no material evidence but that of the trustee, who is made a competent witness by a release. She swears to no fact or circumstances, capable of being investigated, or contradicted; but merely to a naked declaration, supposed to be made by the husband himself, admitting that the purchase was made with the trust money. That in all cases is most unsatisfactory evidence, on account of the facility with which it may be fabricated, and the impossibility of contradicting it. Besides, the slightest mistake or failure of recollection may totally alter the effect of the declaration. There are no corroborating circumstances by any writing under his hand."

The danger of relying upon that class of evidence is further enhanced where, as in this case, the testimony of the principal actors in the occurrence is lost—that of the wife by death, and of the husband by incompetency. Common observation teaches us that the character of desultory talk attributed to these people is of common occurrence in the unrestrained intercourse between man and wife, or other members of the same family; and it would be a most unsafe doctrine to rest the title to real estate upon any such shadowy foundation. Moreover, the fact must not be lost sight of, that Rutherford and wife were married prior to the Married Woman's Act (April 4, 1877), and at that time, in the absence of stipulation to the contrary, the money of the wife when received by the husband became his absolute property.

The question is an open one in this State, whether an *express trust* affecting real estate is valid unless in writing. *Sprinkle* v. *Hayworth,* 26 Gratt. 384; *Bost* v. *Nalle,* 28 Gratt. 423; *Jesser* v. *Armentrout,* 100 Va. 666, 42 S. E. 681.

On that subject, Mr. Minor remarks: "Whether contracts touching *trusts in lands* are within our statute, has not been adjudged; but it would seem that little doubt can exist that they are. In England all doubt is obviated by sec. 7 of the statute of frauds (29 Car. II, c. 3), which requires all creations and declarations of trusts to be in writing, signed by the party, or by last will; whilst sec. 8 excepts *resulting, implied and constructive trusts.* (2 Washb. R. Prop. 191-2) 2 Min. Inst. (4th ed.) 847.

In *Jesser* v. *Armentrout, supra,* Keith, P., in delivering the opinion of the court, says: "It is not necessary, we think, to discuss the controverted question as to whether a trust in lands may be created by a parol declaration. We prefer to leave that question where it was placed by Judge Moncure in *Sprinkle* v. *Hayworth,* 26 Gratt. 384, and by Burks, J., in *Bost* v. *Nalle,* 28 Gratt. 423. If a trust could be created by parol, the declaration should be unequivocal and explicit, and established by clear and convincing testimony." The learned judge proceeds to show the total insufficiency of evidence such as we are considering to prove the existence of a trust, and concludes: "Granting that a trust may be created by parol, to establish such a trust upon such declarations would be productive of great mischief."

In this aspect of the case, we are of opinion that the decree of the circuit court is without error and ought to be affirmed.

*Affirmed.*