# Richmond

## Johnny T. Malbon v. James Davis.

November 25, 1946.

Record No. 3103.

Present, Holt, C. J., and Hudgins, Gregory, Eggleston, Spratley and Buchanan, JJ.

The opinion states the case.

*W. R. Ashburn*, for the appellant.

*James G. Martin and Son* and *Richard B. Kellam*, for the appellee.

SPRATLEY, J., delivered the opinion of the court.

James Davis filed a bill against Johnny T. Malbon seeking to cancel and annul a deed of bargain and sale dated December 28, 1943, whereby the plaintiff had conveyed to the defendant certain real estate consisting of seventeen acres, situated in the county of Princess Anne, Virginia. The bill charged that the defendant fraudulently induced and procured the plaintiff to execute the deed to the property in fee simple, under the pretext that it was a mere mortgage on the property securing a loan made by the defendant to the plaintiff.

The defendant answered and denied all allegations of fraud and all facts from which it might have been inferred.

The parties will be hereinafter referred to in the position each occupied in the trial court.

The evidence was taken *ore tenus* by the trial court, after which it entered a decree holding that the deed of bargain and sale was obtained by fraud and was, in equity, a mortgage, and directing that upon the payment or tender by the plaintiff to the defendant of the money loaned, the

deed should stand cancelled and satisfied. From this decree Malbon has appealed.

The defendant contends that the finding of the chancellor is contrary to the law and the evidence, without any credible evidence to support it, and against the weight and preponderance of the evidence.

The plaintiff, James Davis, a colored man, was eighty-two years of age at the time of the trial of the cause in the lower court, being eighty years old at the time of the execution and delivery of the deed. He had since 1891 owned and lived on a tract of land consisting of seventeen acres. In 1926, he executed a deed of trust on this property to secure a debt of $200 to Jim Smith, a white farmer, of the same neighborhood. This indebtedness was, with considerable interest thereon, still outstanding and unpaid in 1943. Jim Smith, deceased, the lender, before his death, had left instructions with his heirs not to press the debtor. Taxes on the land for a number of years were delinquent and unpaid. Estimates of the value of the land and house thereon ranged from $2500 to $3500.

James Davis had three living children and several grandchildren. Of them, one child lived in his house, the others in that neighborhood. Johnny T. Malbon, the defendant, a grandson, made his home in the city of Norfolk, where he had lived for fifteen years. He was thirty-five years of age at the time of the trial, and was then in the Naval service of the United States.

Malbon testified that Davis began to worry about the debt to Jim Smith in 1940, and asked a brother of the defendant to request the defendant to take up the debt for him, because he wanted to keep the land in his family. This Malbon declined to do. However, in 1942, Davis, in person, again requested him to take over the debt. Malbon at first hesitated, but finally agreed to do so. He paid the estate of Jim Smith $396 for principal and interest, and also paid the delinquent taxes amounting to $336.11, upon an agreement that his grandfather would give him a deed of trust or mortgage to secure such payments.

On December 28, 1943, pursuant to this agreement, Malbon went to Princess Anne courthouse and had J. Paul Woodhouse, a commissioner in chancery, prepare a deed of trust upon the property of Davis and a note evidencing the advancements, which he had made on behalf of his grandfather. He then went in an automobile to his grandfather's home, got the old man, and started to the office of a notary public, for the purpose of having the deed of trust and note properly signed and executed. On their way to the notary's office, at the suggestion of Davis, they stopped at the house of Eddie Brown, who had previously had several conversations with Davis about buying a portion of the property. There, according to Malbon and Brown, Davis said to Brown: "Brown, this is my grandson. My place is under mortgage, and I told you you could get six acres, but if you can do business with me today—my grandson is going to take up the mortgage, and if you can do business today you can deal with me, and if you don't you can do business with my grandson."

Brown was not ready to purchase the land, and after a stay of fifteen or twenty minutes, Malbon and Davis proceeded to the office of Floyd T. Deary, a notary public, at London Bridge, in Princess Anne county.

Deary was a notary public, and had been a justice of the peace for sixteen years. During that time he had attended to many of the small business affairs of the people residing in the surrounding community.

The deed of trust and note were given to Deary, and he testified that he explained, in detail, their purport to James Davis. Deary knew of the indebtedness due by Davis to the Smith estate. He had helped settle that estate. He asked Davis whether he had been pressed to pay that debt. Davis replied that he had not.

According to both Deary and the defendant, the following conversation then took place between Deary and Davis:

"A. I told him what it was, said to him that it was a mortgage, and he said that it was not what he wanted, that he wanted to give his grandson the place with the under-

standing that he would live there as long as he lived. I said, 'If you sign this you can draw a will and leave Johnnie the place.' He said no, he wanted to give it to him now. I said, 'That is a job for a lawyer, not me.' He asked me where was a lawyer, and I told him Mr. Paul Ackiss at Virginia Beach. He asked if he could see him, and I said I would phone up. I picked up the telephone and called Mr. Ackiss and told him that Uncle Jim was in there and wanted some papers drawn and would he be able to wait for him in his office, as it must have been getting late in the afternoon. He said he would. He asked me what he wanted. I told him he wanted to deed his grandson his place. After that they got in the car and went down to Mr. Ackiss.

"Q. Was it Jim Davis himself who told you what he wanted?

"A. Jim Davis himself told me because I suggested his making a will. I explained to him that if he give Johnnie Malbon a deed for that property he would not have any control over it any more, and he said it was all right, that it was his grandson and he wanted him to have the place. It was all right with me if he wanted to do it because I had no interest in it.

"Q. Was anything said about his children, whether they were interested?

"A. I asked him about his children and he said they were not interested in it, and I said I guessed they were not if they let a mortgage run fifteen years for $200.00.

"Q. They left there to go to Mr. Ackiss' pursuant to the telephone call you had made at Jim Davis' request?

"A. Yes."

Deary said that he also understood from Malbon that the deed was to be made with the reservation that Davis could live on the place for the rest of his life. Malbon testified that in the office of Deary, his grandfather said, "he wanted me to have the place there, but to let him live there until he died. That was our bargain; and I was not to bother him and I haven't bothered him."

Malbon did not seek to change the above agreement after the conveyance. Thereafter he paid the taxes and allowed his grandfather to collect the rents.

After the conference in Deary's office, the plaintiff and defendant went immediately to the office of Paul W. Ackiss, at Virginia Beach, Virginia. Mr. Ackiss has been a practicing attorney in Virginia for seventeen years, and for the past thirteen years Commonwealth Attorney of Princess Anne county. He said that Deary gave him the parties' names over the telephone and told him the deed was to be drawn to Malbon. He then waited in his office until late in the evening until Malbon and Davis arrived. Upon arrival, Malbon gave to Ackiss the prepared deed of trust to get the description of the property for its conveyance by Davis. A deed of bargain and sale in fee simple was prepared and Davis was brought into a small waiting room to execute it. It was read to Davis. When asked if that was what he wanted, that is, convey the property to Malbon, Davis indicated his assent. Davis then executed the deed by making his mark and acknowledging the same before a notary public. Ackiss further attested the signature as a witness.

Ackiss said that he was very careful to explain to Davis the effect of the paper, which he was signing, and said that, "I noticed when he came in he was feeble. I wanted to be sure that he understood he was giving the deed to Malbon, on account of his advanced age. * * * I witnessed his signature because he could not sign, and I told him it was a deed for the property, and he indicated he understood, either by a nod or by saying yes, I don't remember which."

Some months later in May or June, 1944, Marie Breham, the child of James Davis, who lived in his house, went to the office of Ackiss, and asked him what paper he had prepared for her father. She was told that he had prepared a deed of bargain and sale.

In the argument at the bar of this court, the defendant, by counsel, expressly stated it was the intention of the parties that the deed should reserve to the grantor an estate

for his life. He asks that the deed be reformed accordingly, so as to make their intention effective.

The evidence for the plaintiff shows that James Davis was physically weak. He was well known in the county where he had lived for many, many years. In former years he had executed a number of deeds of trust on the land in question and other land.

Dr. R. W. Woodhouse, who attended James Davis for a number of years, said that while he did not have senile dementia, he was weak in his mental faculties and very forgetful. Asked as to his mental condition, he replied, "Well, of course, Jim has got sense. His mental faculties have been good, but during the past three or four years Jim is forgetful; he is just forgetful."

The children, grandchildren, and neighbors of Davis agreed that Davis suffered from the physical infirmities of old age, and that he was very forgetful of what he did from day to day. Marie Breham testified that "He would tell you one thing today, and tomorrow he don't know anything about it."

Davis testified that Malbon told him that the Smith estate was worrying him about the debt due it and that, he, Malbon, would pay it off if Davis consented; that he, Davis, replied, "If you want to, you can pay it off and I will pay you, if you want to"; that Malbon paid the debt off, and brought him a note to sign; and that he afterwards went to the office of Mr. Ackiss to sign the note. In the office of Ackiss, he said that "He (Malbon) told Mr. Ackiss he had bought my place. He said I sold it to him, and I didn't know what I had done. Mr. Ackiss told me to touch the pen, and I did, but what he put down I don't know. He didn't read it to me."

Davis admitted going to the house of Eddie Brown, but denied having any conversation with him. He also stated that Malbon told Deary that he had bought the place, subsequently saying that he didn't hear that statement. He said he did not know that he had signed a deed, and intended only to execute a note evidencing the amount of his indebt-

edness to Malbon. He denied, in a confused way, the evidence of Deary, Ackiss, and Malbon that he ever had the deed of trust or deed read or explained to him, or that he had requested the land be conveyed to Malbon.

Davis further said that he did not know, until months after his visit to the office of Ackiss, that Malbon had a deed for his land, and not until he sent for Malbon and learned from Malbon that the latter claimed the land by virtue of the deed. This suit was thereafter instituted on October 6, 1944.

In many details, the testimony of Davis was confused, cloudy, and conflicting. He was very old. He was extremely forgetful. But, so are many men of younger age. He was ignorant in the sense that he had little education; but there is nothing to indicate that he lacked a degree of sagacity which is often possessed by the unlearned. Neither forgetfulness, regret, nor a desire to reconsider an impulsive action indicates a status of legal incompetency.

The contention of Davis that he was fraudulently induced to execute the deed, believing it to be merely a writing evidencing his indebtedness to Malbon is contradicted by every other witness having knowledge of the facts. It may be charitably said that his admitted forgetfulness explains his present views and the value to be given to his testimony. The reasons which moved him to make the deed were apparently satisfactory until June, 1944, when he learned that he could not sell the property, and his other children became disturbed over what he had done.

The failure to have the deed contain a reservation of a life estate to the grantor in the property may have been due to some confusion or mistake in the telephone message from Deary to Ackiss, or to the ignorance of the parties as to the necessary legal requirements therefor.

The finding of the trial court brands Malbon as a swindler. To sustain such a finding there must be clear, cogent, and convincing proof. It cannot be sustained by doubtful and uncertain testimony. *White* v. *Bott*, 158 Va. 442, 444, 448, 158 S. E. 880, 163 S. E. 397, 398; *Sands* v. *Bankers' Fire Ins. Co.*, 168 Va. 645, 648, 192 S. E. 617.

In *Redwood* v. *Rogers*, 105 Va. 155, 158, 53 S. E. 6, this is said:

"The charge of fraud is one easily made, and the burden is upon the party alleging it to establish its existence, not by doubtful and inconclusive evidence, but clearly and conclusively. Fraud cannot be presumed. It must be proved by clear and satisfactory evidence. It is true that fraud need not be proved by positive and direct evidence, but may be established by facts and circumstances sufficient to support the conclusion of fraud. But whether it be shown by direct and positive evidence, or established by circumstances, the proof must be clear and convincing, and such as to satisfy the conscience of the chancellor, who should be cautious not to lend too ready an ear to the charge."

This principle has been reaffirmed in numerous cases. *Haynes* v. *Peterson*, 125 Va. 730, 733, 100 S. E. 471, 6 A. L. R. 1456; *Barbour* v. *Barbour*, 155 Va. 650, 156 S. E. 365; *McClintock* v. *Royall*, 173 Va. 408, 4 S. E. (2d) 369.

Under the evidence, it cannot be successfully contended that Malbon exercised undue influence or practiced deception to induce his grandfather to execute the deed of bargain and sale. Malbon saw him but rarely, and only went to his home when he was sent for. There was nothing in their course of dealings to establish a confidential relationship, whereby through persuasion Davis was fraudulently induced to sign the deed, believing it to be a note.

In *Hancock* v. *Anderson*, 160 Va. 225, 168 S. E. 458, this is said:

"The presumption is that people who deal with each other, grown men and women, deal with each other as such, and this presumption is not destroyed by disparity in age nor by the ties of blood, and this is particularly true where a fraud is charged, either actual or constructive. *Moore* v. *Gregory*, 146 Va. 504, 131 S. E. 692."

It is settled law in Virginia that the finding of the trial judge settles conflicts in the evidence. The same rule which determines when and under what circumstances a trial court may or should set aside a jury's verdict prevails. Evidence relied on to sustain a verdict must be credible evi-

dence. It must be evidence which one has a right to believe. It must not strain the credulity of the court. It must fairly sustain the verdict, judgment, or decree; otherwise we would be powerless to correct an error. A judgment or decree that is plainly wrong, or without evidence to support it, cannot be allowed to stand. Virginia Code, 1942 (Michie), section 6363. *Boswell* v. *Lipscomb*, 172 Va. 33, 41, 200 S. E. 756; *Gillespie* v. *Somers*, 177 Va. 231, 13 S. E. (2d) 330; *Ramey* v. *Ramey*, 181 Va. 377, 25 S. E. (2d) 264. See also, *Fedele* v. *National Liberty Ins. Co.*, 184 Va. 528, 534, 35 S. E. (2d) 766.

■ Upon a fair consideration of all of the evidence, it is clear that it falls far short of proving bad faith or fraud on the part of Malbon. It wholly fails to show undue influence or persuasion on the part of Malbon which enabled him to take an improper advantage of his aged grandfather. On the other hand, it shows that it was the desire and intention of Davis, at the time of the execution of the deed, to convey the land to Malbon, subject to a life estate reserved to the grantor.

We are, therefore, of opinion that the decree of the trial court is contrary to the law and the evidence and without credible evidence to support it.

We are further of opinion that it was the clear intention of Davis to reserve to himself a life estate in the property conveyed. This was entirely agreeable to Malbon. To that extent the deed should be reformed.

We, therefore, reverse the decree of the trial court, and the facts before us being such as to enable us to attain the ends of justice (Virginia Code, 1942 (Michie), section 6365), a decree will be here entered reforming the deed of December 28, 1943, to the extent that the real property in question shall be conveyed to Johnny T. Malbon, subject to an estate for life reserved therein to the grantor, James Davis. A copy of this decree shall be recorded in the proper deed book of Princess Anne county, indexed in the names of the parties hereto, and this cause dismissed at the cost of the appellee.

*Reversed and final decree.*