NANYE B. SUTTON, AS EXECUTRIX OF THE ESTATE OF WEBB D.
SUTTON, DECEASED, AND IN HER OWN RIGHT, ET AL.
v. NELLIE EIFFERT SUTTON, ET AL.

September 10, 1952.

Record No. 3971.

Present, Hudgins, C. J., and Eggleston, Spratley, Buchanan, Miller and Whittle, JJ.

The opinion states the case.

*A. T. Eskridge, Price & Price, Stant & Roberts* and *Dalton & Poff*, for the appellants.

*Peyton, Beverley, Scott & Randolph* and *Bentley Hite*, for the appellees.

EGGLESTON, J., delivered the opinion of the court.

Nellie Eiffert Sutton and others, the widow and heirs at law of George Mack Sutton, deceased, filed their bill in equity against Nanye B. Sutton as executrix of the estate of Webb D. Sutton, and in her own right, seeking to establish a trust in and to certain personal estate owned by Webb D. Sutton at the time of his death and by the latter's widow, Nanye B. Sutton.

The bill alleged, in substance, that in 1928 Webb D. Sutton, who had recently suffered financial reverses in the construction

business, sought the help of his brother, George Mack Sutton, in buying the "old Sutton home place" in Pulaski county, Virginia, which then stood in the name of their brother, Charles E. Sutton, and was about to be sold to satisfy certain liens thereon; that Webb promised Mack that if he (Mack) would buy the home place and assist him (Webb) in obtaining "sufficient credit, capital and other backing" to enable him (Webb) to go into a new construction business, they "would operate the farm and construction business as partners and coadventurers;" that relying upon these promises Mack purchased the farm and rendered his brother financial assistance, by reason of which the latter was able to go into the construction business; that between the date of this agreement, in 1928, and the death of Mack on May 5, 1942, Mack "on various occasions approached" Webb "with the idea of becoming active in the construction business, as an active partner or coadventurer" therein; that "on each occasion" Mack was told that the business which Webb had undertaken "was not making money" and that he, Mack, should retain his then employment with another concern until the construction business "had become financially profitable;" that "despite the fiduciary relationship" existing between them, Webb concealed from Mack, up to the time of the latter's death, the fact that the business had become quite profitable; that upon the probate of the will of Webb, shortly after his death on October 28, 1948, the complainants discovered for the first time that he had left a large estate which he had devised by his will to his widow, Nanye B. Sutton, for life, with remainder to Milligan College, Inc.; and that in addition to the property which had been devised to her by her husband's will, Nanye B. Sutton was "possessed of a substantial fortune in her own name and right," acquired by her through gifts or transfers from her husband of funds and property, a part of which rightfully belonged to George Mack Sutton or his heirs at law.

The prayer of the bill was that the court "determine and decree that by virtue of the facts" alleged "a trust arose and was created" whereby complainants "as the successors in title of George Mack Sutton" were "entitled to one-half of the profits accruing from the said business operated by" Webb D. Sutton; that Nanye B. Sutton, as executrix of the estate of Webb D. Sutton, deceased, "and in her own right, because of the said gifts

and transfers to her," by Webb, "be held and decreed to be a trustee *ex maleficio* to the extent and in the amount of one-half of the said profits."

The defendant filed a demurrer and answer. While the answer admitted that the Sutton home place had been purchased by Mack at the request of Webb, it alleged that at the time it was agreed that Webb, or the latter's wife, would purchase the property from Mack, and that this was done by deed dated December 16, 1929. The answer further denied that Mack had rendered any financial assistance to Webb in establishing the new construction business, or that the parties had entered into any contract, express or implied, that they were to operate such business as partners or coadventurers, or that Mack was to have any interest therein.

Later during the proceedings Milligan College, Inc., was made a party defendant, and it, too, filed a similar demurrer and answer.

After the court had heard the evidence *ore tenus*, much of it over the objection of the defendants, it entered a decree holding that "ample evidence" had been introduced, "free from proper objection," to justify it in reaching the conclusion that "grounds for the creation of an equitable trust" had been "proved by clear, explicit and convincing evidence direct and circumstantial," in favor of the complainants "in the estate of Webb D. Sutton, deceased, and in the property of Nanye Bishop Sutton, in her own right, which she obtained from the said Webb D. Sutton, by gift or otherwise. The extent of the interest in the said property of each to be determined by the commissioner."

By the same decree the cause was referred to a commissioner who was directed "to make all proper inquiries as to factual matters * * *, and to take the necessary evidence to determine the amounts to which the complainants are entitled."

The matter is before us on an appeal by the defendants from that decree, and the crucial question is whether the evidence is sufficient to sustain the finding of the trial court.

From the considerable evidence introduced, much of which is immaterial, we gather these undisputed facts: Webb D. Sutton and George Mack Sutton were born in Pulaski county. Webb, the elder of the brothers, went to Kentucky to engage in the lumber and construction business, and in 1905 Mack went to work

for and remained with him until 1914. Webb continued in the construction business while Mack secured a position with a coal company at Ansted, West Virginia, by which he was continuously employed until his death in 1942.

In 1927 the Sutton Construction Company, through which Webb was conducting his business, became financially embarrassed and went into bankruptcy. Shortly thereafter Webb formed, under the laws of Kentucky, a new corporation, Sutton Company, Inc., which went into the construction business. While the three incorporators of the new company were Webb D. Sutton, A. S. Glenn, and H. R. Dysort, the corporate records show that the entire capital stock of $7,000 was issued to Nanye B. Sutton in return for cash paid by her. The evidence is that she obtained this money through a mortgage on her home in Ashland, Kentucky.

In 1928 the Sutton home place in Pulaski county, which stood in the name of Charles E. Sutton, was about to be sold to satisfy certain mortgages. To avoid that situation, and in order that they might provide a home for their afflicted brother, Frank, Webb and Mack agreed that Mack should take title to the property in his name and that Webb would relieve him of it as soon as he was able to do so. Mack acquired title to the farm by deed dated July 16, 1928, and in turn conveyed it to Nanye B. Sutton, Webb's wife, by deed dated December 16, 1929.

It was during the negotiations by the two brothers, Webb and Mack, for the purchase of this property that the complainants say that the further agreement was made that they would operate it as partners and go into the construction business on the same basis. The full evidence as to this agreement will be detailed later.

In 1938 the Sutton Company, Inc., the Kentucky corporation, transferred all of its assets to a corporation of the same name, organized under the laws of the State of West Virginia.

The new construction company was successful in obtaining the necessary credit and began a prosperous career in 1940. There is no evidence that Mack, who died in 1942, invested any money in the concern by way of purchase of stock, loans, or otherwise, or that he took any part in the operation of the business.

Neither is there any evidence that during his lifetime he as-

serted any claim against Sutton Company, Inc., or against his brother, Webb, for an interest in the business by way of an allocation of stock or the right to participate in the profits or otherwise. Nor is there any evidence that Mack's administrator made any claim, such as that which is now asserted, against Webb during the latter's lifetime.

The present suit was instituted in November, 1949, about a year after the will of Webb D. Sutton, which disclosed that he had left considerable estate, was probated in the Circuit Court of Pulaski county. Incidentally, it appears from the present record that the validity of that will has been attacked in a proceeding instituted by Margaret S. Jones, a sister of Webb and Mack Sutton.

The specific nature of the trust is not defined in the bill of complaint, and so far as we have been able to ascertain was not disclosed to the trial court.

In their brief the complainants (the appellees) say: ''The entire nature of this proceeding has been to establish a constructive trust upon the basis of bad faith on the part of Webb Sutton, to prevent unjust enrichment on his part, and that of his estate, and to require restitution in the interests of the complainants.''

Amplifying this position, they state the purpose of the litigation thus: The ''two brothers entered into a verbal agreement, under which each was to perform certain duties in order to start and create a business for their mutual benefit and profit.' Mack performed, to the financial detriment of himself and his family, and, although the business was started and became highly profitable, Mack never received one penny of benefit or profit from the business or from his brother, who was, to all intents and purposes, 'the business.' Webb failed to perform, failed to disclose what his fiduciary relationship to his brother demanded that he disclose, concealed that which he should have disclosed and, by deceiving his brother, became unjustly enriched at the expense of Mack. His widow, Nanye B. Sutton, who was a nominal officer in the business, likewise became unjustly enriched at the expense of Mack Sutton and his heirs.''

Since, the complainants say, Mack died without discovering that he had been thus defrauded, his heirs at law are entitled to

enforce such rights against Webb's estate and the property of Nanye B. Sutton, Webb's widow.

It is well settled that an agreement which is the basis of a constructive trust may be proven by competent parol testimony and does not violate the statute of frauds. *Horne* v. *Holley,* 167 Va. 234, 240, 188 S. E. 169, 172.

It is equally well settled that a mere preponderance of the evidence is not sufficient to prove the basis of a constructive trust, but that it must be established by evidence which is clear, definite and convincing. 65 C. J., Trusts, § 237, pp. 493, 494; 54 Am. Jur., Trusts, §§ 620, 621, pp. 478-482; 3 Bogert on Trusts and Trustees, § 472, pp. 13, 14; *Zogg* v. *Hedges,* 126 W. Va. 523, 29 S. E. (2d) 871, 874, 152 A. L. R. 991; *All* v. *Prillaman,* 200 S. C. 279, 20 S. E. (2d) 741, 750-753, 159 A. L. R. 981.

In substance, the bill of complaint charges Webb D. Sutton, now deceased, with gross fraud and breach of trust. We have repeatedly said that a high degree of proof is required to sustain such a charge. 8 Mich. Jur., Fraud, § 61, pp. 751, 752.

Counsel for the appellees admit that the burden was on them to establish their claim of a constructive trust by evidence which was ''clear, explicit and convincing,'' and the lower court in the decree appealed from recited that the evidence adduced had measured up to this requirement. The ultimate question we have to decide is whether the evidence warrants that conclusion. It is plain, we think, that it does not.

The evidence on behalf of the complainants consists of certain declarations with respect to the subject matter made by George Mack Sutton, certain admissions by Webb D. Sutton, and certain conduct of the latter.

Over the objection of the defendants, Nellie Eiffert Sutton, the widow of Mack, testified that in June or July, 1928, Mack met Webb in Charleston, West Virginia, at the latter's request; that ''when he got back home'' Mack told her that Webb had said that the home place was going to be put up for sale; that Webb wanted to buy it but did not have the necessary money to do so and could not obtain a loan for the purpose; that Webb requested Mack ''to take it (the farm) over and hold it for him until he could get on his feet and he would take it back;'' and that ''the understanding was he (Mack) was to be a partner on

the farm and when he (Webb) got started in business again he (Mack) would be a partner in the business.''

The witness said that she was opposed to her husband's buying the farm, but that he told her that he could finance the deal and that his family would be in better financial circumstances ''when W. D. took him into business, when he got started.'' Again, she said, ''He (Mack) told me that W. D. promised him he would be a partner in the farm and he would be a partner in the business when he (Webb) started it.''

According to the further testimony of this witness, Mack, at considerable sacrifice to himself and his family, borrowed money on his life insurance policies to take over the farm. She said nothing, however, as to any loans made by Mack to Webb in connection with establishing the new construction business.

Mrs. Sutton further testified that her husband told her that ''every time'' he spoke to Webb about the business Webb replied that ''he was not ready to take him in yet because he was not making any profit.''

Margaret S. Jones, a sister of the Sutton brothers, testified, over the objection of the defendants, that in August, 1930, she sought financial assistance of her brother, Mack, who told her that he was unable to help her because he had exhausted his resources in helping Webb; and that on that occasion Mack told her that Webb ''had agreed that he (Mack) was to go in business with him as soon as he could get another business started, and that they both had (so) agreed,'' much to Mack's satisfaction.

At about the same time, this witness said, she had an interview with her brother, Webb, who told her that Mack had ''bled himself * * * to help me get back on my feet and we are in business together, and as soon as the business develops to the extent it will support the two families, Mack is coming with me into Virginia (sic).'' But what amount Mack had loaned to Webb was not indicated by this witness.

Over the like objection of the defendants, Nile Straughn, a son-in-law of Mack, testified that in the summer of 1929 Mack, ''very much embarrassed,'' borrowed money from him, saying that he had exhausted his resources in a loan to Webb ''in a joint venture'' which he had gone into with the latter. Furthermore, the witness said, ''for the next several years following that,'' Mack borrowed money from him from time to time ''to send to his brother, Webb Sutton, to be used in the operation of this

business which Mack and Webb had entered into and in which Mack was later to take a part." But the amounts loaned by this witness to Mack and by Mack to Webb are not indicated.

Straughn further testified that in the summer of 1940 Webb told him that "he hoped it would soon be possible to bring Mack here into the business."

Charles E. Sutton, a brother, testified, over the objection of the defendants, that in September, 1941, Mack told him, in tears, that "he had been greatly deceived" by their brother, Webb, in their "business dealings."

However, this witness, who was present when Mack and Webb made the arrangement to buy the home place, heard no mention of their proposed association in the construction business.

Nanye B. Sutton, Webb's widow, testified that she had never heard of the alleged oral agreement between her husband and Mack that they would go into the construction business together. She had inherited a small amount from her father and put this, as well as the proceeds of a mortgage on her home, into her husband's business.

The admissibility of evidence of the admissions and declarations of the parties and the weight of such statements in establishing a constructive trust are governed by the general rules of evidence. 1 Bogert on Trusts and Trustees, § 50, p. 363; 54 Am. Jur., Trusts, § 615, p. 475.

It is elementary that admissions against interest of a declarant are admissible as an exception to the hearsay evidence rule. 7 Mich. Jur., Evidence, § 256, p. 636 ff. And this is true of the admissions, such as they are, which the evidence here shows Webb made to his sister, Mrs. Jones, that he and Mack were "in business together," and to the witness, Straughn, "that he hoped it would soon be possible to bring Mack here into the business."

But the declarations of Mack to his wife, his sister, Mrs. Jones, and Straughn, which tended to show that Mack and Webb had agreed to go into business together, or had done so, were self-serving declarations and were not admissible unless they formed a part of the res gestae. 7 Mich. Jur., Evidence, § 255, p. 632 ff.

Whether a statement is a part of the res gestae depends upon the circumstances of each case and there is no fixed rule by which the matter is to be determined.

In Chappell v. White, 182 Va. 625, 633, 29 S. E. (2d) 858, 861, we said: "The purpose of permitting the introduction of this

class of evidence, which is an exception to the hearsay rule, is to prove facts and not opinions. The *res gestae* is not the witness speaking but the transaction voicing itself. The spontaneity of the utterance is the guaranty of its trustworthiness in substitution of that provided by oath and cross-examination.''

In that case we further said that while the declaration or statement need not be coincident or contemporaneous with the occurrence of the event, it must be made at such time and under such circumstances as will exclude the presumption that it is the result of deliberation. It must not be a mere narrative of a past, completed affair. (182 Va., at page 633, 29 S. E. (2d), at page 862.)

Tested by these principles it is extremely doubtful whether any of the alleged declarations of Mack were a part of the *res gestae*. But assuming that they were, or, as the complainants argue, that their admissibility as such was within the sound discretion of the trial court (*Ellis* v. *Virginia Ry., etc., Co.,* 132 Va. 24, 29, 30, 110 S. E. 382), we are of opinion that such self-serving declarations by Mack, even when coupled with the admissions of Webb and other circumstances relied on, fall far short of the high standard of proof required to establish a constructive trust as is here claimed.

The supposed admissions and declarations were made from ten to twenty years before the trial and after both of the alleged declarants had died.

As is said in 20 Am. Jur., Evidence, § 1196, p. 1048, ''Admissions and declarations, particularly of persons since deceased, where not supported by other proof, especially so much of them as are not against proprietary interest, are regarded as of comparatively little probative value and should be scrutinized carefully. Courts, it is said, lend very unwilling ears to testimony of statements of what dead men have said. Such testimony is often regarded as the weakest and least satisfactory of any.'' See also, 31 C. J. S., Evidence, § 266, p. 1018; *Id.,* § 382, pp. 1178, 1179; 1 Bogert on Trusts and Trustees, § 50, pp. 364, 365; *Garrett* v. *Rutherford,* 108 Va. 478, 480, 481, 62 S. E. 389; *Taylor* v. *Delaney,* 118 Va. 203, 205, 206, 86 S. E. 831.

The reasons for the rule are obvious. Since the supposed declarant is dead he cannot contradict the statements attributed to him. Moreover, the repetition of such statements is subject to

imperfection and mistake after a lapse of time. *Garrett* v. *Rutherford, supra* (108 Va., at pages 480, 481).

The declarations which it is testified to that Mack made to his wife, Nellie, to his sister, Margaret, and to his son-in-law, Straughn, at most show merely a promise by Webb to take Mack into business with him at some time in the future. But just what that business was to be, where to be conducted, and upon what basis is in no way defined.

The complainants claimed and sought to prove that the proposed business for the mutual benefit of the brothers was actually established by Webb, that Webb was guilty of a breach of faith in not allowing Mack to participate therein, and that as a result thereof the proceeds derived by Webb and the latter's wife from the business became impressed with a constructive trust in favor of Mack.

But the evidence that a business was established by Webb, for the mutual benefit of Mack and himself, is of the vaguest character. Mrs. Jones testified that Webb told her in 1930 that he and Mack were "in business together." Straughn testified that he loaned money to Mack who said he was sending it to Webb to be used in the business which "Mack and Webb had entered into."

There is no evidence as to the basis on which Mack was in the business with his brother, whether as an employee or partner, or whether as an officer or stockholder in the corporation through which the business was being conducted.

The complainants rely upon a letter which Webb wrote his brother, Mack, on October 8, 1929, as showing that they were in business together. In the letter Webb enclosed a renewal note and a curtail on the indebtedness on the farm and expressed regret that he had been unable to pay the note in full, saying that "We have not received final estimate on the work we have just completed and it may be ninety days before we do." In commenting on the status of the work which the Sutton Company, Inc., was then doing, the writer said: "We are now starting our new work this week, * * *. We have made some money on the job just finished."

The argument is that the use of the pronoun "we" indicated that the writer considered that he and the addressee, Mack, were in business together. Such a strained construction needs little comment. Obviously the "we" referred to the corporate opera-

tion of the business. While the allegations in the bill and the testimony of Mack's widow link the agreed joint operation of the farm with the agreed joint venture in the construction business, the complainants admit that Webb fully performed his promise with respect to the farm when he relieved Mack of it some fifteen months later. They argue, however, that the performance of the farm agreement by Mack was the consideration for Webb's agreeing to take him into the construction business.

Thus the evidence as to the making of the underlying contract for a partnership or joint venture in the construction business, or the existence of that relation, is not "clear, explicit and convincing." On the contrary, it is vague, indefinite and of little probative value. Moreover, there is a singular lack of evidence of corroborating circumstances to support the claim of the complainants. It is admitted that Mack put no money into the business, that he made no claim for any part of the profits, that he never visited any of the various jobs, or showed any interest therein. His conduct up to the time of his death in 1942 was entirely inconsistent with the position that he was a full partner or joint adventurer in the business.

On the other hand, the undisputed evidence is that up to the time of Webb's death in 1948 he dealt with the business as being that of the corporation of which he was the head and in which he and his wife were the principal stockholders.

We are not unmindful of the rule that where the evidence in an equity suit is heard *ore tenus* by the trial court its weight and sufficiency are primarily for that tribunal. But where, as here, it is plain that the evidence does not measure up to the required standard of proof it is our duty to reverse the decree upon which it is based. See *Malbon* v. *Davis*, 185 Va. 748, 757, 40 S. E. (2d) 183, 187, and cases there cited.

In *Malbon* v. *Davis, supra,* we reversed the decree complained of because we found that the evidence, heard *ore tenus* by the trial court, was not "clear, cogent and convincing" as the nature of the case required it to be. The same is true here.

For these reasons the decree complained of is reversed and a decree will be entered here dismissing the bill of complaint.

*Reversed and final decree.*