CASE No. 994.

OLIVER *v.* GRIMBALL.

1. In construing acts done by married women prior to 1868, affecting their separate property, the court may look to the constitution of that year to see what is now the policy of the state as to the control of married women over their separate property.

2. A marriage settlement executed in 1860, gave to the intended wife the right to demand and receive her estate from the trustee, and gave power to the trustee, upon the written request of the wife, to give, transfer, sell or otherwise dispose of the property to any person whomsoever, for such price or consideration as should seem proper to the wife, and when sold for a money consideration, the proceeds to be re-invested, &c. In 1867, in accordance with the written request of the wife, the trustee, for the alleged consideration of $1, conveyed the property to the husband. *Held,* that the deed was a valid transfer under the terms of the settlement, and conveyed a good title. *Cases considered.*

Before Tʜoᴍsoɴ, J., Charleston, June, 1880.

Controversy without action, between Robert C. Oliver and Berkley Grimball. The marriage settlement, omitting the parts immaterial to the opinion in this case, was as follows:

To have and to hold all and singular the said stocks, inter-

ests and estates, unto the said L. H. Mouzon and his successors, and his and their heirs, executors and assigns forever. In trust, nevertheless, for the uses, intents and purposes following, to wit: To the use of the said F. M. Thompson, her heirs, executors and assigns, until the said marriage; and from and after that event, then in trust the sole and separate use, benefit and behoof of the said F. M. Thompson, notwithstanding her coverture, free from the debts, and not subject to the control or interference of the said R. C. Oliver, for and during the joint lives of the said F. M. Thompson and the said R. C. Oliver, subject, however, to the right of the said F. M. Thompson at any time during the said coverture, to demand and receive from the said L. H. Mouzon and his successors, any part or all of the said interests, estate and property on her sole request, order or receipt in writing, and the same to dispose of according to her own will and pleasure; her sole receipt, request or order being hereby declared a sufficient discharge to the trustees from all liability further to account for the portion of the said estate so paid or delivered to her, the said F. M. Thompson. And in case the said F. M. Thompson shall survive the said R. C. Oliver, then the said L. H. Mouzon and his successors shall deliver up and transfer the said interests, estate and property of every kind to the said F. M. Thompson, to her, her heirs, executors and assigns forever, freed and discharged from all trusts whatsoever. But should the said Frances depart this life during the lifetime of the said Robert, then in trust to hold the said interests, estate and property for such uses, purposes, trusts and limitations as the said F. M. Thompson shall, by her last will and testament, notwithstanding her coverture, duly declare and appoint, concerning the same. But should she depart this life without having executed such will and testament, then, should there be living children of the said marriage, in that case the said interests, property and estate shall be held in trust, to divide the same equally amongst the children of the said marriage, share and share alike, if more than one; and if but one, then to that one absolutely, to him, her, them and his, her and their heirs, executors and assigns forever; the children, if any, of such as may die in the lifetime of the said F. M. Thompson, to represent and take their parents' share. But if there be no issue of the said marriage living at the death of the said F. M. Thompson, then the said estate, interests and property shall be distributed according to the statute of distributions, to her heirs and legal representatives, freed and discharged from all trusts whatsoever. Provided, however, that the said L. H. Mouzon and his successors, shall have power at all times hereafter, upon the written request of the said F. M. Thompson, to

give, transfer, sell or otherwise dispose of any or all of the said estate, interest or property to any person whomsoever, for such consideration or such price as may seem proper to the said F. M. Thompson; and when the same shall be sold for a money consideration, the proceeds shall be re-invested as she, the said Frances M., may direct, subject, however, to the said trusts and limitations as are hereinbefore declared concerning the original property and estate hereby settled.

· The deed from L. H. Mouzon to R. C. Oliver, recited the marriage settlement, and the property covered by it and the written request of Frances M. Oliver, formerly Thompson, that this deed should be executed. The deed purported to be "in consideration whereof and for the sum of one dollar, to me paid by the said Robert C. Oliver;" and then continued, "do hereby grant, bargain and sell unto the said Robert C. Oliver all of my right, title and interest of, in and to all the said property, both real and personal, derived through the deed aforesaid; to have and to hold all and singular the said property, real and personal, unto the said Robert C. Oliver, his heirs and assigns forever."

To this was appended this written request:

To L. H. MOUZON.—I do hereby order or request you to execute the annexed deed of conveyance to Robert C. Oliver— all the property secured to me in the marriage settlement of my husband (the said Robert C. Oliver) and referred to by the said annexed deed, without limitation or any reservation whatever; and I do hereby declare that I do this under the power reserved to me in the marriage settlement or deed aforesaid.

Given under my hand and seal this 19th day of January, A. D. 1867.                     FRANCES M. OLIVER. [L. S.]

Signed, sealed and delivered in the presence of—
WM. H. AUSTIN.
W. BOWMAN.

The controversy involved the title of Oliver to a lot of land in Charleston city, held by him under this deed.

All other matters are stated in the opinion of the court.

The Circuit decree is as follows:

The marriage settlement between Frances M. Thompson and R. C. Oliver and L. H. Mouzon, as trustee, bears date January 4th, 1860. The date of the deed from the trustee to R. C. Oli-

ver, under order of Frances M. Oliver, is February 12th, 1867. Thus the questions submitted in this case are to be determined without regard to the change made by the constitution of 1868, in relation to the powers of married women over property which they held at the time of marriage or afterwards acquired. *Reeder & Davis* v. *Flinn*, 6 *S. C.* 239 ; *Dunn* v. *Dunn*, 1 *S. C.* 350.

In framing settlements in pursuance of articles, they must be made not only in conformity with the intention of the parties, so far as the intention is lawful, but they must also be made so as to give effect to that intention. *Atherby on Marriage Settlements* 57 ; *Porcher* v. *Daniel*, 12 *Rich. Eq.* 357. And in determining the extent of a power, the intention of the parties in its creation must constitute the guide. *Fronty* v. *Fronty*, *Bail. Eq.* 517. This intention must be gathered from the terms of the instrument and ascertained from the trusts or uses declared under the marriage settlement between these parties.

*The first use* is for F. M. Thompson, her heirs, executors and assigns, from the time of executing the settlement until her marriage. *The second use* is for the sole and separate use of F. M. Thompson in the fullest sense from the marriage, during the joint lives of husband and wife. *The third use* is that in the event the wife survives the husband, the trustee is to deliver up and transfer the property to F. M. Oliver, discharged from all trusts. *The fourth use* is that in the event the husband survives the wife, she may make her will, notwithstanding coverture. *The fifth use* is that should the wife die before her husband, leaving no will, her child or children to take with right of representation. *The sixth use* is that should the wife die before her husband, leaving no will nor child or children, the property to be divided under the statute of distributions.

Could a settlement be made which more studiously excludes the husband from all right to, or benefit in, the property ? For only in the last alternative as an heir-at-law, can he have any interest. Some of the powers of the settlement, it is alleged, have been executed, and the questions are, have these powers been executed according to the intention of the parties as expressed in the settlement? It is objected that the spirit and intent of the settlement have been violated, because the powers

have been exercised in behalf of the husband, who was expressly excluded, and whom the court never appoints as trustee for the wife. In the case Ex parte Hunter, the court forcibly expresses the character of the relations between husband and wife where there is a marriage settlement. "It is certainly extraordinary that a tribunal, one of whose peculiar functions consists in securing the interests of the wife against the husband, should be asked to become the instrument for delivering the separate property, which it is bound to protect, into the hands of the latter, against whose power and control it is its duty to guard it." *Rice's Eq.* 295.

Chancellor Harper says: "In general, the appointment of a trustee is for the protection of the rights of the married woman against the husband. By constituting him a trustee he is invested with the legal title, and might convey any property to a purchaser without notice; over money his control would be absolute even if he should give the most satisfactory security to answer for the capital." *Robinson* v. *Dart, Dud. Eq.* 131. Chancellor Dunkin says: "Almost universally the leading purpose of creating a trust is to exclude the husband, and this object is seriously jeopardized, if not practically frustrated, by appointing him a trustee, and thus vesting in him the legal title." *Dean* v. *Lanford,* 9 *Rich. Eq.* 427.

The whole property, worth thousands of dollars, is conveyed by the trustee to the husband, for the nominal consideration of $1. The proceeds of the sale of property are to be re-invested. This disposition, in the event of a sale, must be complied with, being directed by the settlement. Could there be a more farcical act? The purchaser from the husband might well pause and ask if this result was in the minds of the parties when the settlement was executed. Surely no deed provides the elements of its own destruction; nor could it have been intended that this deed, professedly made to protect property from marital control, should complete its duty by a total surrender to the husband of the whole estate without even the limited protection afforded by the common law. Here the interests of the children also are destroyed. Though taking as volunteers, these interests are not to be disregarded. In settlements of the wife's property made

by the court, the interests of the children, as well as those of the wife, are always contemplated. *McQueen on Husband and Wife* 82, 83.

But has the wife exercised the powers according to the terms of the marriage settlement—that is, the trustee, by her direction? The Supreme Court says: "It is settled law in this state, that without the aid of a Court of Equity, a married woman cannot dispose of or charge her separate estate except in the execution of powers conferred by the instrument creating such estate. *Ewing* v. *Smith*, 3 *Desaus. Eq.* 457 ; *Reid* v. *Lamar*, 1 *Strob. Eq.* 27," and other cases.

"In the present case the power of the wife must stand on the *terms of the order settling the trusts*, for the court will not sanction the loan of the wife's separate estate to her husband without security." *Dunn* v. *Dunn*, 1 *S. C.* 354.

Under the use to the wife during the joint lives of her husband and herself, a power is given to her to demand and receive from the said L. H. Mouzon * * * any part or all of the said interest, estate and property on her sole request, order or receipt in writing, *and the same to dispose of according to her own will and pleasure;* her sole receipt, request or order being declared a sufficient discharge to the trustee * * * for the portion of the said estate *so paid or delivered to her.*

The plain intent of this power is to enable the wife to resume her right to the property, and the possession thereof, to receive some or all of it and dispose of it as she pleases. That this resumption of right and possession is peculiar to herself, is manifest from the power to dispose according to her will and pleasure. Had the transfer been made according to any power to another, her right in the property would cease when the transfer was made. The power to transfer or dispose of the property, after her receipt of it, negatives the idea of a transfer to another upon her order. The exercise of this power of appointment to herself is equivalent to a resumption of the ownership in fee. This power speaks of the estate *so paid or delivered to her.* The words of this power are too plain to admit of any construction that would authorize a transfer to another upon her order. The transfer can be only to herself.

2 N

Besides a recital of the above power, the deed from the trustee to the husband refers to another power for authority. The deed recites that "said L. H. Mouzon shall at all times hereafter, upon written request of *cestui que trust,* have power to give, transfer, sell or otherwise dispose of any or all the said estate, interest or property to any person whomsoever." Here the recital in the deed ends. But to make the sentence and the sense complete, there must be added, according to the marriage settlement, the following words: "For such consideration or such price as may seem proper to the said F. M. Thomson, and when the same shall be sold for a money consideration, the proceeds shall be re-invested as she, the said Frances M., may direct, subject, however, to the said trusts and limitations as are hereinbefore declared concerning the original property and the estate hereby settled."

This power does not authorize a gift of the property. The disposition made is to be for some consideration or price. The price was left to the good sense and discretion of the wife. She, under this power, could not sell to the husband for a nominal sum. Would she have directed a sale for such a sum to a stranger? And the husband stood in the relation of a stranger to her. Such was the case of *Dunn v. Dunn,* where money of the wife was lent to the husband by the trustee, with the alleged consent of the wife. The court, besides the objection that the money was lent to the husband, held that surety should have been required from the husband, as it should be from any other person. So the sale should have been made as if to a stranger. But were it urged that some regard should be had to the relations of the parties as husband and wife, then the very influence intervenes which the marriage settlement was intended to exclude. The property, however, may not be sold for a money consideration, still the language is, "when the same shall be sold."

The reasonable intendment is that the trust property may be exchanged for other property, to which the terms of the trust would attach upon exchange. The power contemplates no gift to a third party.

The case of *Converse* v. *Converse,* 9 *Rich. Eq.* 535, was cited

as conclusive of the right of the wife having a general power of appointment to transfer her separate estate to her husband.

An examination of the case discloses that a power was reserved to Mrs. Converse "*to revoke* the uses declared in the deed creating the trust—to *declare new uses*, and to convey the property, or any part thereof, *to any person or persons* as she saw fit, in the same manner as if she were a *feme sole.*" These powers far exceed any that are reserved in the marriage settlement under consideration.

Nor is it to be overlooked when the wife exercises the powers reserved, the court said that " this *is not an unreasonable provision* for the husband, nor an unjust concession on the part of the wife; *similar*, and in some respects, *better terms* being conceded to the husband in the daily practice of the Court of Equity." P. 564.

Both in the character of the powers and in their execution the cases are dissimilar.

The conclusion of the court is that " The act of the trustee in transferring to R. C. Oliver, the husband of his *cestui que trust*, Frances M. Oliver, at her written request and direction, the whole of her separate estate, for the consideration of one dollar, was not valid and authorized."

And were such conveyance valid and authorized, the said R. C. Oliver, having purchased with full knowledge of the trusts, becomes a trustee for the wife, under the marriage settlement; and that a purchaser from R. C. Oliver, with a knowledge of the trusts, becomes a like trustee, as to the property purchased by him."

From this decree plaintiff appealed, upon the ground that the Circuit judge erred in holding that under the powers contained in the marriage settlement, the deed of Mouzon to Oliver, at the written order and request of F. M. Oliver, was not a valid and authorized act, and did not transfer the fee in the property to the said R. C. Oliver absolutely.

*Messrs. Lord & Inglesby*, for appellant.

*Mr. A. T. Smythe*, contra.

March 11th, 1881. The opinion of the court was delivered by

McGOWAN, A. J. This action was heard upon a case agreed in a controversy submitted. The facts all appear in the "case," and need not be repeated here, except so far as may be necessary to make the judgment intelligible. The plaintiff, R. C. Oliver, claims that the defendant, Berkley Grimball, shall specifically perform his contract for the purchase of a lot, described in the case as 440 King street, and the said Berkley Grimball resists the claim.

Frances M. Thomson, being of full age and possessed of a considerable estate, in contemplation of marriage with the plaintiff, Robert C. Oliver, January 4th, 1860, executed a marriage settlement to L. H. Mouzon, trustee, by which she conveyed her entire property to the uses and trust therein expressed. This deed was recorded and the marriage therein contemplated solemnized. On January 19th, 1867, the said Frances M., by writing, under her hand and seal, directed to her said trustee, ordered and required him to execute to Robert C. Oliver the deed of conveyance, thereto annexed, of all the property covered by the marriage settlement, without limitation or any restrictions whatever, and declared her said order or request to be under the power reserved to her in the said deed of settlement. Pursuant to the order and the terms and provisions of the settlement, the trustee, in consideration thereof, and of the sum of $1, on February 11th, 1867, conveyed the said property, real and personal, to Robert C. Oliver, his heirs and assigns forever. On March 15th, 1880, Berkley Grimball agreed to purchase from R. C. Oliver the lot aforesaid, parcel of the said trust property, for the price of $3500. A title deed from R. C. Oliver to Berkley Grimball, of the aforesaid lot, with renunciation of dower by Mrs. F. M. Oliver, is admitted to have been tendered and refused on the ground that the said Oliver had not good title and the right to convey the same. Robert C. Oliver and Mrs. Frances M. Oliver, his wife, are both still alive and have issue of the marriage living. The questions submitted to the court are as follows:

"*First.* Under the marriage settlement aforesaid was the act

of the trustee in transferring to R. C. Oliver, the husband of the *cestui que trust*, Frances M. Oliver, at her written request and direction, the whole of her separate estate for the consideration of one dollar, valid and authorized?

"*Second.* If this question is answered in the affirmative, did the said deed of L. H. Mouzon, trustee, dated February 12th, 1867, convey in fee simple the lot in question to the said R. C. Oliver?

"*Third.* If these questions be answered in the affirmative, then the said Berkley Grimball is to be decreed to accept the title deed now tendered, pay the purchase money so agreed on, to wit, 'the sum of thirty-five hundred dollars, and twenty-five dollars for papers and the costs of this suit.'

"*Fourth.* If these questions, or either of them, are answered in the negative, then the defendant, Berkley Grimball, is to be decreed not to accept the title as tendered, and the plaintiff is to pay the costs of suit."

The case was heard by Judge Thomson, who adjudged that Berkley Grimball is not bound to accept the title tendered by the plaintiff Oliver. From this decree the appeal comes to this court.

Before the adoption of the constitution of 1868, the powers connected with the separate estate of a married woman were moulded and limited by the deed which created the estate. The duties to be performed were generally continuous during the coverture, and it might be interesting to inquire what effect the constitution would have upon acts done *after* its adoption under a trust created *before* that event. But in this case not only the marriage settlement, but the alleged execution of the power, were prior to the constitution, which cannot, therefore, in terms, apply to them. But this settlement gives powers as large as the constitution attaches to all separate estates, and surely we may look to the constitution to see what is now the policy of the state as to the control of married women over their separate property. As was said in the case of *Witsell* v. *Charleston*, 7 *S. C.* 101 : "Now that the constitution has reversed the rule of the common law and substituted general competence for the former rule of incompetence, as it regards the holding and acquisition of a sepa-

rate estate, it is not for the courts, in nice readings of its texts, to return to a state of things from which the Courts of Equity have long striven to be released."

We will consider the cases according to the law as it was settled at the time the transactions took place. This is well stated by Chancellor Harper in *Reid* v. *Lamar*, 1 *Strob. Eq.* 27 : " It is the settled law of this state that when property is given or settled for the separate use of a married woman she has no power to charge, encumber or dispose of it unless in so far as the power to do so has been conferred on her by the instrument creating the estate, which power must be strictly construed in contradiction to many English cases."

What powers are conferred upon the married woman by the marriage settlement in this case? They are very large. It would be difficult to conceive larger. The deed contains, among others, these two provisions :

1. " *Subject*, however, to the right of the said F. M. Thomson, at any time during the said coverture, to demand and receive from the said L. H. Mouzon and his successor any part or all of the said interests, estate and property on her sole request, order or receipt, in writing, and the same to dispose of according to her own will and pleasure. Her sole receipt, request or order being hereby declared a sufficient discharge to the trustee."

2. "*Provided*, however, that the said L. H. Mouzon and his successor shall have power at all times hereafter, upon the written request of the said F. M. Thomson, *to give, transfer, sell or otherwise dispose of* any or all of the said estate, interest or property to any person whomsoever, for such consideration or such price as may seem proper to the said F. M. Thomson ; and when the same shall be sold for a money consideration, the proceeds shall be re-invested as the said Frances M. may direct, subject, however, to the same trusts and limitations as hereinbefore declared concerning the original property and estate hereby settled."

Frances M. made the written request to the trustee, L. H. Mouzon, to convey to her husband, Robert C. Oliver, all the property covered by the marriage settlement, and the said trustee accordingly executed deed of the same to Robert C. Oliver,

stating the consideration to be the request, in writing, of the *cestui que trust*, and of $1 paid by the said Robert C. Oliver. Was this a good execution of the powers in the deed?

So far as form is concerned, the transaction is scrupulously in accordance with the terms of the settlement. We regard the conveyance as a gift, the consideration of $1 being merely nominal. The deed expressly authorized *a gift*. The words are " give," " transfer," " sell," or " otherwise dispose of." The consideration might be good as well as valuable, and in that case there was to be no re-investment, as shown by the expression " *when* the same shall be sold for a money consideration the proceeds shall be re invested as the said Frances M. may direct." The meaning of this is, undoubtedly, that the property might be transferred for other than " a money consideration," thus answering to the words " give " and " transfer." But it is urged that while the literal terms of the deed authorized the transaction, which was in exact conformity with the words, it was still not a compliance with the true intent and meaning of the deed. That the whole deed must be taken together and the powers determined by the intention of the parties at the time it was executed; that such intention must necessarily coincide with the relation of the parties and all the provisions of the instrument, which, being a marriage settlement, declaring trusts in favor of the issue of the marriage, &c., could not reasonably or possibly have been intended to bestow the power to " give " and " transfer " the property without any consideration, and, therefore, these words should be regarded as stricken out. That the manifest object of the deed, in contemplation of a marriage, was to protect the property from marital control, and to allow the husband to get that control through means of the deed itself, would be to allow it to provide the elements of its own destruction.

The words of a written instrument are certainly the usual means of expressing the intention of the parties, and when they are clear and unambiguous, and in harmony with the context, it would require very strong inferred general intent to expunge them. This is not a case in which a third person declared trusts for the married woman and the issue of the marriage, &c.; but even if it were so, the well-established rule is that an indefinite

gift, with a general power of appointment, properly executed according to the deed, gives absolute right to the property. But Frances M. was the absolute owner of the property before marriage; she had the right to make the settlement or not, as she saw fit, and having determined to make it, she had the right to shape and mould its provisions precisely as she chose, even to the extent of providing the elements of its own destruction. She chose to declare certain uses in particular events, but at the same time she also chose to declare what rights she retained. One of the most marked features of the whole instrument—that which stands out from every part of it—is the unaltered and absolute control which, in any and all circumstances, she reserves for herself over the property. It was protected amply against marital control, but not against her own. She never parted with the right to do at any moment that which would, in effect, destroy the uses declared. She expressly retained the right at any time during coverture "to demand and secure any part or all of the said property on her sole receipt." It was also provided "that upon her written request *the trustee* should have power to "give, transfer, sell or otherwise dispose of the said property," &c. We think the conveyance of the property by Mouzon, the trustee, to Robert C. Oliver, the husband, at the request of the wife, was in conformity not only with the terms construed strictly, as required by the decision in Lamar *v.* Reid, but also the true intent and meaning of the marriage settlement.

Was that conveyance, in execution of the powers, good and valid? It is insisted that the power which permits the wife to give her separate estate to her husband, is against the spirit and principles of the old equity decrees and should not be enforced. There is no doubt, as stated in the Circuit decree, that the leading object in creating this trust was to exclude the marital rights of the husband, and for that reason the Court of Equity was disinclined to appoint the husband trustee for his wife. The rule was as stated by Chancellor Dunkin in *Dean v. Sanford,* 9 *Rich. Eq.* 427: "Almost universally the leading purpose of creating a trust is to exclude the husband, and this object is seriously jeopardized, if not practically frustrated, by appointing him a trustee, and thus creating in him the legal estate." The object

of this rule was to prevent the control of the husband against the will of the wife. But we know of no principle of equity which excluded the married woman from giving her separate estate to her husband, only provided the deed creating the separate estate contained the power to make such disposition, and there was no proof of fraud, duress or undue influence.

Mr. Perry, in his work on Trusts, Chapter XXII., Section 679, says: "When a married woman holds property to her separate use under a settlement or under these statutes, she may give it to her husband or sell it to him for a valuable consideration." And again, at Chapter XXII., Section 667: "The trustee will be compelled to give legal effect to any such alienation by transferring the property, even if it is a gift, and transfer to the husband or for his benefit, for a direct gift to the husband will be sustained, if not made under the improper or undue influence of the husband."

It is urged that a married woman could not give her inheritance to her husband directly, and that which she could not do directly she ought not to be permitted to do indirectly, and more especially through the operation of a deed, the very object of which was to prevent the control of the husband. But in the case of *Garvin* v. *Ingraham*, 10 *Rich. Eq.* 130, it was held that a wife may, under the act of 1795, indirectly convey her inheritance to her husband. That is to say, she may join her husband in conveying to a third person, who, by previous understanding, may immediately re-convey to her husband. Chancellor Wardlaw, in delivering the judgment of the court, says: "The act makes no change of the common law in prohibiting one from conveying to himself, (*Fergerson* v. *Fergerson*, 3 *Strob.* 461,) but it authorizes, or at least does not inhibit, the power of a wife to bestow her estate upon her husband indirectly. In many cases it is politic and dutiful that such power should be exercised. I trust it may never be considered improper for a wife to contribute, by all lawful means, to the success of her husband's enterprises. * * * I loathe the notion of imposing upon a wife any restrictions in her desire to aid and cherish her husband which common law and statute have not imposed. It is clear that she may mortgage her estate for his convenience, and on

like reasoning she may surrender her ultimate interest in an estate to which she has a present title in freehold."

In the case of *Converse* v. *Converse,* 9 *Rich. Eq.* 535, which was an action by the wife to set aside a deed to her husband, under powers which, we think, were not more ample than those in the deed of settlement in this case, the power to resume control of the property or to direct the trustee to give it away, are, at least, as large as those given in the Converse deed, which were to revoke the uses declared in the deed, " to declare new uses and to convey the property, or any part thereof, to any person or persons as she saw fit, in the same manner as if she was a *feme. sole.*" In that case the law was announced by the Court of Errors in these clear and unequivocal terms : " That a married woman having a separate estate, with a general power to dispose of the same as if she were a *feme sole,* may bestow it upon her husband, is so well established at this day as not to admit of debate or doubt. Whether we refer to English authorities or to the decisions of the courts of the different states of this Union, including those of South Carolina, the result is the same, the principle is clearly settled, and nothing can be considered as settled by judicial decisions if the principle can be brought into question or be shaken."

The first two questions submitted to the court are decided in the affirmative.

1. The act of the trustee in transferring to Robert C. Oliver, husband of his *cestui que trust,* Frances M. Oliver, at her written request and direction, the whole of her separate estate for the consideration of $1, was valid and authorized.

2. The deed of L. H. Mouzon, trustee, bearing date February 12th, 1867, did convey in fee simple the lot in question to the said R. C. Oliver, and the said Berkley Grimball is bound to accept the said title deed, pay the purchase money and for papers and costs, as stipulated in the case.

The decree of the Circuit judge is reversed, and the case remanded for such orders as may be necessary to carry the judgment into effect.

SIMPSON, C. J., and McIVER, A. J., concurred.