COURT OF APPEALS OF VIRGINIA


Before:   Judges Haley, Beales and Alston
Argued at Alexandria, Virginia


ANTHONY MICHAEL SFREDDO

                                                                OPINION BY
v.        Record No. 0282-11-4                      JUDGE JAMES W. HALEY, JR.
                                                                  JANUARY 24, 2012
VANESSA SFREDDO


FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
James H. Chamblin, Judge

Allison Crouch Coppage (Walker Jones, PC, on briefs), for
appellant.

David L. Duff (The Duff Law Firm, on brief), for appellee.


I.  INTRODUCTION

In this divorce appeal, Anthony Michael Sfreddo (husband) argues the trial court erred in

(1) classifying his interest in a family-owned company as marital; (2) awarding Vanessa Sfreddo

(wife) an inappropriately large share of the value of that company; (3) valuing a second company

partially owned by husband; and (4) failing to consider interest wife could earn from the

monetary award when determining spousal support.  We agree the trial court should have

classified husband's interest in the first company as his separate property, making it unnecessary

for us to consider the second assignment of error.  Accordingly, since we reverse on the first

issue, we necessarily remand the fourth issue for further consideration.  We affirm the trial court

on the third issue.

## II. BACKGROUND

The parties married in June 1990. They separated in February 2009.

During the marriage, husband acquired an interest in two companies: Triple S Termite and Pest Control and APS Investments. At the time the parties separated, he owned a fifty percent interest in each.

In 2004, husband's mother was the sole shareholder of Triple S and husband and his brother worked for the company. All three served as corporate directors—the only corporate directors. Acting in their roles as the only corporate directors, they decided to transfer ownership of the company to husband and his brother. Thus, at a shareholder meeting on December 29, 2004, the company "sold" husband and his brother two hundred shares each at a par value of one dollar per share, for a nominal purported consideration of two hundred dollars from each person. The company simultaneously resolved to redeem the mother's shares for payments over a term of fifteen years. The brothers received their shares the next day, and the mother transferred her shares to the company the following day.

At trial, husband, his mother, and his brother all testified they understood the transferring of the company to the brothers to constitute a gift. Husband testified he never paid his mother anything for the stock and his brother likewise never paid anything. He later continued by stating that "my mother gave it to us." Husband's brother also testified that he knew of no money changing hands. The mother testified: "In 2004, I agreed to give my two sons . . . two hundred shares of my stock."

In 2003, Triple S had redeemed the half interest of another relative of husband for $1.5 million dollars. Husband's half interest in Triple S at the time of the hearing had a value of $1.636 million dollars.

Husband and his brother started another company known as APS Investments. Under this form, they purchased a house outside of Fredericksburg, Virginia. To fund the purchase, the brother paid five thousand dollars as an earnest money deposit and $48,689 as a down payment. Husband contributed no money. The brothers shared an understanding that if they sold the house, they would return the brother his advance contributions first and then split the remaining funds. Nothing in writing secured the brother's advances; rather, the brothers relied on mutual trust of repayment. The house had a value at the time of the hearing of $290,000. APS also had a bank account that at the time of the hearing had a balance of around $1,100. Aside from the bank account and the house, APS Investments owns no other property.

Regarding the disputed shares of Triple S stock, the circuit court *found as a fact that husband's mother intended to make a gift of Triple S stock to him.* Despite this finding, the court concluded that since technically the stock came from the corporation, the corporation must also have intended to make a gift. The court found the evidence of a separate corporate intent to make a gift insufficient. It held husband had purchased the stock for value, apparently also finding husband had paid for it. Regarding APS Investments, the court determined the value of the real property and the bank account constituted the value of the company. The court did not consider the advances by husband's brother as affecting the value of APS. Finally, wife received a monetary award of $690,000 and permanent spousal support of five thousand dollars per month. Husband now appeals.

III. ANALYSIS

A. Classification of Company Stock

Husband argues the trial court erred in classifying his stock in Triple S as marital property.[1] He maintains he received it as a gift, making it his separate property.[2]

1. Standard of Review

We recognize that under our standard of review we view the evidence in the light most favorable to the prevailing party, here wife, as to the classification of the Triple S stock. White v. White, 56 Va. App. 214, 216, 692 S.E.2d 289, 290 (2010). We further recognize that the determination of donative intent is one of fact, Utsch v. Utsch, 266 Va. 124, 128, 581 S.E.2d 507, 508-09 (2003), and that "because the trial court's classification of property is a finding of fact, that classification will not be reversed on appeal unless it is plainly wrong or without evidence to support it," Robinson v. Robinson, 46 Va. App. 652, 661, 621 S.E.2d 147, 151 (2005) (*en banc*); see also Code § 8.01-680.

---

[1] At trial, wife argued husband had conceded in interrogatory answers that Triple S was marital property. Husband responded the interrogatories at issue concerned only personal property, not business property. In pronouncing its ruling from the bench, the trial court decided the gift issue on the merits without reference to the disputed discovery. On brief, wife again asserts husband's interrogatory answers denied separate property status.

In Smith v. Mountjoy, 280 Va. 46, 55 n.6, 694 S.E.2d 598, 603 n.6 (2010), our Supreme Court stated: "Mountjoy asserts that the issue of ratification is waived because Carol did not plead such as an affirmative defense. The circuit court, however, decided the issue, and Mountjoy does not assign cross-error claiming that the issue was not properly before the circuit court." Here, wife has not assigned as cross-error the trial court's decision as to the effect of the interrogatory answer and, thus, we do not consider it.

[2] We do not consider any issues regarding whether the trial court may be affirmed on the basis of fraud or corporate veil piercing. These issues were not raised by the parties at trial or in this Court, nor were they considered by the trial court (except for the trial court's brief musing over whether it would be necessary for husband, not wife, to pierce the corporate veil). We decline to address these issues *sua sponte*.

We also do not consider whether the mother and the brothers had legal authority to issue the brothers shares without adequate consideration. The issue for this case is limited to whether wife should receive a portion of the company husband possesses.

Code § 20-107.3(A)(2) "creates a rebuttable presumption that property acquired during the marriage is marital property." Lambert v. Lambert, 6 Va. App. 94, 99, 367 S.E.2d 184, 187 (1988). "[T]he party . . . claiming property as separate has the burden to produce satisfactory evidence to rebut this presumption." Rexrode v. Rexrode, 1 Va. App. 385, 392, 339 S.E.2d 544, 548 (1986). However, gifts from others to a party represent separate property. Code § 20-107.3(A)(1). When "[i]n the case of a gift . . . there is credible evidence presented to show that the property was intended by the donor to be the separate property . . . the presumption is overcome, and the burden shifts to the party seeking to have the property classified as marital." Stainback v. Stainback, 11 Va. App. 13, 17-18, 396 S.E.2d 686, 689 (1990); see also Rahbaran v. Rahbaran, 26 Va. App. 195, 210, 494 S.E.2d 135, 142 (1997).

In order to show a gift, a party must prove several elements: "(1) the intention on the part of the donor to make the gift; (2) delivery or transfer of the gift; and (3) acceptance of the gift by the donee." Robinson, 46 Va. App. at 665, 621 S.E.2d at 154 (citation omitted). The party asserting the existence of a gift has the burden of proof by clear and convincing evidence. Cirrito v. Cirrito, 44 Va. App. 287, 303, 605 S.E.2d 268, 275 (2004).

2. Corporate Intent to Gift

The trial court held the stock transfer did not constitute a gift because husband failed to prove corporate intent to make a gift. The court found proof of corporate intent necessary since the corporation issued new stock to husband and redeemed the mother's shares, meaning husband received his stock from the company. We observe that the trial court found as a fact that husband's mother intended to make a gift of the Triple S stock to him and that there is no evidence but that the stock was delivered to and accepted by husband. We further observe that there is no evidence of commingling, transmutation or joint titling of the stock. One basis of the

trial court's classification of the stock as marital was the purported failure of husband to show corporate donative intent, an issue we now address.

A "corporation can act only through its officers and agents." Pulliam v. Coastal Emergency Servs. of Richmond, Inc., 257 Va. 1, 24, 509 S.E.2d 307, 320 (1999); see also Greenberg v. Commonwealth ex rel. Attorney Gen. of Va., 255 Va. 594, 600, 499 S.E.2d 266, 269 (1998). "[C]orporate intent is shown by the actions and statements of the officers, directors, and employees who are in positions of authority or have apparent authority to make policy for the corporation." United States v. Basic Constr. Co., 711 F.2d 570, 573 (4th Cir. 1983). "[T]he corporation, being an artificial person created by law, can have no separate intent of its own apart from those who direct its affairs." Loftin & Woodard, Inc. v. United States, 577 F.2d 1206, 1244 (5th Cir. 1978) (citation omitted).

Code § 13.1-673(B) states that "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed under the direction of, its board of directors." A board of directors has "'the widest powers,'" for "'all the various acts and contracts which a corporation may enter into are entered into by and through the board of directors.'" Sterling v. Trust Co. of Norfolk, 149 Va. 867, 878, 141 S.E. 856, 859 (1928) (quoting Taylor v. Sutherlin-Meade Tobacco Co., 107 Va. 787, 791, 60 S.E. 132, 134 (1908)). "The affairs of corporate bodies are within the exclusive control of their board of directors, from whom authority to dispose of their estates must be derived." Clement v. Adams Bros.-Paynes Co., 113 Va. 547, 549, 75 S.E. 294, 295 (1912). Thus, the intent of the board of directors is necessarily the intent of the corporation, for the corporation as a fictitious entity formulates intent through the board.

Moreover, under appropriate circumstances, a court may consider the intent of a sole shareholder as a factor in determining corporate intent.  See In re Roco Corp., 701 F.2d 978, 984 (1st Cir. 1983); United States v. Gallagher, 856 F. Supp. 295, 299 (E.D. Va. 1994).

Even viewing the evidence in the light most favorable to wife, as the prevailing party in the trial court, Gray v. Gray, 228 Va. 696, 699, 324 S.E.2d 677, 679 (1985), the trial court's conclusion that there was not a corporate intent to gift the shares to husband and his brother was plainly wrong and unsupported by the evidence.  See Code § 8.01-680 ("[T]he judgment of the trial court shall not be set aside unless it appears from the evidence that such judgment is plainly wrong or without evidence to support it.").

A gift, used here in its ordinary sense, includes not only "something that is voluntarily transferred by one person to another without compensation," but also "a voluntary transfer of real or personal property without any consideration *or without a valuable consideration*."  Webster's Third New Int'l Dictionary 956 (1981) (emphasis added).  Notwithstanding the label of a sale in the corporate minutes and the existence of token consideration, a variety of factors that are particular to this transaction indelibly mark its true nature as a gift.

First, the corporate minutes, signed by all three directors, reflect that when the corporation redeemed the stock of the mother, it sold two hundred shares to husband and his brother not at fair market value, but at par value of one dollar per share.[3]  After the redemption of the mother's stock, husband's new shares constituted half the company.  Using the sale price of half the company from 2003 of $1.5 million dollars, divided by two hundred shares, results in an actual value of $7,500 per share.  Using the valuation of the business from the time of trial

---

[3] The "par value" is the "face or stated value of a share of stock or bond."  Black's Law Dictionary 1123 (6th ed. 1990).  "In the case of a common share, par means an arbitrary or nominal dollar amount assigned to the share by the issuing company."  Id.  The record reflects the stock certificates here had a par value of one dollar each.

results in an actual value of about eight thousand dollars per share for every dollar from husband. The vast disparity between sale price and value clearly manifests the board's intent to gift.

Second, all three directors testified they understood the transaction to represent a gift. Husband testified neither he nor his brother paid anything for their shares. Rather, he testified that "my mother gave it to us." Husband's brother also testified he never paid for his shares and had no knowledge of husband paying for the shares. The mother testified she intended "to give my two sons" stock. Although the trial court's factual finding that husband paid a nominal sum for the shares receives deference under the circumstances of this case, it has significance that all the directors understood the transaction to represent a gift.[4]

Lastly, the trial court specifically found that the mother, as the sole shareholder, intended to make a gift, and the mother's testimony supported this finding. The trial court determined: "I think that Mr. Sfreddo's mother . . . really thinks that she made a gift of this stock to her two sons, including Mr. Sfreddo and his brother . . . . I really think she believes that." The mother testified she regarded the transaction as a gift of her property: "I agreed to give my two sons . . . two hundred shares of *my* stock." The trial court's findings and the mother's testimony carry special weight concerning corporate intent in light of the mother's status as the sole shareholder and a director. Obviously, in this family held company, husband and his brother would never have received any shares without their mother's consent.

---

[4] While husband maintains he never actually paid the money, the trial court rejected this factual position. The trial court expressly found: "I find that Mr. Sfreddo purchased two hundred shares from the corporation for two hundred dollars." The corporate minutes support this finding. Moreover, during his testimony, husband was impeached with prior deposition testimony. In the deposition, husband was asked: "Where did your two hundred dollars come from that you used to pay for the purchase of this stock?" He responded: "Probably personally or a check." This represented additional reason for the trial court to doubt the evidence that husband never paid for the stock. The factual findings of the trial court are not plainly erroneous. See Harrison v. Harrison, 58 Va. App. 90, 98-99, 706 S.E.2d 905, 910 (2011). Yet regardless of whether the directors failed to remember that husband paid a nominal sum for his stock, we think it significant they all treated the transfer as a gift.

We conclude, under the applicable standard of review, that the trial court was plainly wrong in failing to conclude that Triple S had donative intent in transferring the stock. We further find that intent is proven by clear and convincing evidence.

In Holloway v. Smith, 197 Va. 334, 335, 88 S.E.2d 909, 910 (1955), Holloway sued Milton Smith, Maude Smith, and Warren Ten Brook, as partners, for payment of a note purportedly executed by Ten Brook for the partnership. The Smiths denied that they were partners with Ten Brook at the time of the execution of the note because the proceeds of the note were to be Ten Brook's capital contribution to join the partnership and that, even if they were partners, Ten Brook was not authorized to bind the partnership. Id. at 338-39, 88 S.E.2d at 913. Thus, there was evidence in the record supporting their position. The trial court concluded that Ten Brook was liable on the note, but the Smiths were not. Id. at 335, 88 S.E.2d at 911. Pursuant to then Code § 50-9, partners were bound if the note was executed by a partner "for apparently carrying on in the usual way the business of the partnership." Id. at 340, 88 S.E.2d at 914. The Supreme Court reversed the trial court and entered judgment against the Smiths. The Court wrote:

> When we apply the provisions of Code § 50-9 to the material and pertinent evidence relating to the making of the loan, and the execution of the note, we can reach but one conclusion, and that is, the acts of the partner, Ten Brook, bound the partnership. *In reaching that conclusion, we are not unmindful of the respect which attaches to the judgment of the trial court, but when a judgment is plainly wrong or without evidence to support it, it becomes our duty to set it aside*.

Id. at 342, 88 S.E.2d at 915 (emphasis added); see also Walrod v. Matthews, 210 Va. 382, 391, 171 S.E.2d 180, 187 (1969); City of Va. Beach v. Roman, 201 Va. 879, 882, 114 S.E.2d 749, 751 (1960); Thalhimer Bros., Inc. v. Buckner, 194 Va. 1011, 1013, 76 S.E.2d 215, 217 (1953).

In reversing the trial court, we here accept that duty.[5]

### 3. Consideration

The trial court further concluded husband had paid valuable consideration for the stock and payment of consideration is inconsistent with a gift. The trial court held husband "*purchased* two hundred shares from the corporation for two hundred dollars." Wife, likewise, argues that husband purchased the stock for value from Triple S. We hold any nominal sum paid by husband did not represent valuable consideration under the circumstances of this case.

The Virginia Supreme Court has stated that a "gift has been defined as a contract *without* a consideration." Ott v. L&J Holdings, LLC, 275 Va. 182, 188, 654 S.E.2d 902, 905 (2008). Indeed, "by definition, a deed of gift requires no consideration." Hill v. Brooks, 253 Va. 168, 178, 482 S.E.2d 816, 823 (1997). Consideration represents "the price bargained for and paid for a promise." Smith v. Mountjoy, 280 Va. 46, 53, 694 S.E.2d 598, 602 (2010) (citation omitted). It may come in "a benefit to the party promising or a detriment to the party to whom the promise is made." GSHH-Richmond, Inc. v. Imperial Assocs., 253 Va. 98, 101, 480 S.E.2d 482, 484 (1997) (citation omitted).

We have held that there was an intent that the Triple S stock be separate property, "property acquired during the marriage by . . . gift from a source other than the other party." Code § 20-107.3(A)(1)(ii). We repeat: a "gift" includes "a voluntary transfer of real or personal

---

[5] This Court has reversed a trial court's classification of gifted property as separate or marital. See Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003); Huger v. Huger, 16 Va. App. 785, 788, 433 S.E.2d 255, 257 (1993); Stainback, 11 Va. App. at 18, 396 S.E.2d at 690.

property without any consideration *or without a valuable consideration*." Webster's, supra, 956 (emphasis added).

We caution that while classic principles of the common *law* of contracts are instructive, those principles are not transmitted unaltered into the context of an *equitable* distribution. Thus, as here, what may constitute classic contractual "consideration" at law may not be "consideration" for the transfer of property in equitable distribution.

In Gamble v. Gamble, 14 Va. App. 558, 569, 421 S.E.2d 635, 642 (1992) (quoting Sawyer v. Sawyer, 1 Va. App. 75, 78, 335 S.E.2d 277, 279 (1985)), we wrote that Code § 20-107.3 defines a structure "for equitable distribution of the marital wealth of the parties: *a distribution* which will equitably 'compensate a spouse for his or her contribution to the acquisition of [all marital] property obtained during the marriage.'" In Roane v. Roane, 12 Va. App. 989, 995, 407 S.E.2d 698, 701 (1991), we reversed the trial court's limitation of a wife's interest in transmuted property "in order that the legislative intent that the parties receive a fair proportion of the marital property be complied with, and to assure that the ends of justice be attained." For example, Virginia equitable distribution law "does not establish a presumption of equal distribution of marital assets." Watts v. Watts, 40 Va. App. 685, 702, 581 S.E.2d 224, 233 (2003) (citation omitted). While these cases deal with the division of marital property, the equitable principles therein enunciated are likewise applicable to the classification of property acquired during the marriage as separate or marital.

We reiterate our *caveat* that principles of the common law of contracts may not fully apply in equitable distribution. That said, our decision is nonetheless supported by those common law principles.

Virginia has long followed the "peppercorn" theory of consideration, under which even a peppercorn suffices as consideration.[6] See Richmond Eng'g & Mfg. Corp. v. Loth, 135 Va. 110, 156, 115 S.E. 774, 787 (1923). A peppercorn has been equated with a cent. Whitney v. Stearns, 16 Me. 394, 397 (1839). Under this theory, "[i]t matters not to what extent the promisor is benefited or how little the promisee may give for the promise." Sager v. Basham, 241 Va. 227, 229, 401 S.E.2d 676, 677 (1991) (citation omitted). "A very slight advantage to the one party or a trifling inconvenience to the other is generally held sufficient to support the promise." Brewer v. First Nat'l Bank of Danville, 202 Va. 807, 815, 120 S.E.2d 273, 279 (1961). "The owner of the historic estate of 'Blackacre' can give it away, and he can sell it for a peppercorn. Courts, though they have long arms, cannot relieve one of the consequences of a contract merely because it was unwise." Planters Nat'l Bank of Fredericksburg, Va. v. E. G. Heflin Co., 166 Va. 166, 173, 184 S.E. 216, 219 (1936).

Nonetheless, it has been recognized that contracts containing only peppercorns as consideration may lack an authentic bargain. Professor Corbin wrote:

> The gross inadequacy of the consideration, as measured by the opinions of other men; may tend to support the conclusion that the parties did not actually agree upon an exchange, that the "peppercorn" was not in fact bargained for by the promisor. If it was not bargained for, it was not a consideration, according to the definition that makes agreed bargain the test. Persons sometimes say that they have bargained, when their other conduct shows that they have not . . . . Courts must first determine the fact of bargain and agreed exchange before they can properly apply the rules of consideration as a bargained exchange.

---

[6] The dictionary states that "[i]n English law, the reservation of a merely nominal rent, on a lease, was sometimes expressed by a stipulation for the payment of a peppercorn." Black's, supra, at 1135. In Barker v. Keete, 89 Eng. Rep. 179 (1678), the court held that "[t]he reservation of a pepper-corn rent on a lease for years is a sufficient consideration to transfer the possession." The principle also dates from early American jurisprudence. See Perkins v. Parker, 1 Mass. (1 Tyng) 117, 126 (1804).

The rule that market equivalence of consideration is not required, and that the value of the consideration is to be left solely to the free bargaining process of the parties, leads in extreme cases to seeming absurdities. When the consideration is only a "peppercorn" or a "tomtit" or a worthless piece of paper, the requirement of a consideration appeared to Holmes to be as much of a mere formality as is a seal.

1 Arthur Linton Corbin, Corbin on Contracts § 127, at 546 (1963).

Professor Corbin's emphasis on the fact of an actual bargain reflects one of the main concerns of contracts law. The basic elements of a contract are an offer, acceptance, and consideration. Snyder-Falkinham v. Stockburger, 249 Va. 376, 381, 457 S.E.2d 36, 39 (1995). An offer "identifies the bargained for exchange." Chang v. First Colonial Sav. Bank, 242 Va. 388, 392, 410 S.E.2d 928, 930 (1991). Contracts typically require a bargain to exist. Restatement (Second) of Contracts § 17 (1981). Our Supreme Court has stated that "the major consideration underlying contract law is the protection of bargained for expectations." Filak v. George, 267 Va. 612, 618, 594 S.E.2d 610, 613 (2004).

The Virginia Supreme Court acknowledged in Hackett v. Emmett, 215 Va. 726, 214 S.E.2d 139 (1975), that a sale for nominal consideration may lack a bargain and actually represent a gift. The primary issue there was whether there was sufficient corroborative evidence, pursuant to then Code § 8-286, of the delivery of an unrecorded deed, so as to pass title upon delivery. Id. at 727, 214 S.E.2d at 140. The corroborative evidence established that the conveyance was a gift from the deceased grantor Harris to Emmett. Id. The Court noted that there was a stronger presumption of delivery when there was a gift, or "voluntary conveyance," rather than in "an ordinary case of bargain and sale," citing a case for that proposition. Id. at 729, 214 S.E.2d at 141 (citation omitted). Apparently, the deed recited familiar language, that of bargain and sale, stating the deed was made in consideration of the sum of five dollars. Id. Yet the Court stated: "We observe that the evidence is clear that the transaction is one of gift and not

- 13 -

bargain and sale.  No consideration was involved, other than a token payment of five dollars, and Emmett testified the property was a gift to him from Harris."  Id.

As relevant to the case we here consider, we note (1) that the Hackett Court, as a condition precedent to invoking the stronger presumption of delivery arising from a gift, specifically rejected the recital in the deed that there was consideration for the transfer; (2) that the Hackett Court concluded money was in fact paid ("other than a token payment of five dollars"); and (3) that here the mother testified, necessarily unlike the deceased Harris, that the transfer was a gift.  The invocation of the stronger presumption of delivery, which formed part of the standard of review, necessarily was part of the *ratio decidendi*, "the essential rationale in the case that determines the judgment," and so part of the holding binding upon us.  See Clinchfield Coal Co. v. Reed, 40 Va. App. 69, 73-74, 577 S.E.2d 538, 540 (2003).

The reason for our Supreme Court's holding in Hackett is that while a gift lacks consideration, Ott, 275 Va. at 188, 654 S.E.2d at 905, it has been recognized that where no bargain actually occurred as evidenced by nominal or sham consideration and the surrounding circumstances, *the purported consideration is not in fact consideration*, see Dulany Foods, Inc. v. Ayers, 220 Va. 502, 514, 260 S.E.2d 196, 203 (1979) (Poff, J., dissenting) ("Unless bargained for, a benefit the offeree confers upon the offeror cannot constitute consideration.").

The Restatement (Second) of Contracts well illuminates this principle.  The Restatement explains:  "To constitute consideration, a performance or a return promise must be bargained for."  Restatement (Second) of Contracts § 71(1) (1981).  In a comment, the Restatement elucidates this by stating:  "[A] mere pretense of bargain does not suffice, as where there is a false recital of consideration or where the purported consideration is merely nominal.  In such cases there is no consideration . . . ."  Id. cmt. b.  In a comment to another section, the Restatement again explains:  "Disparity in value, with or without other circumstances, sometimes

indicates that the purported consideration was not in fact bargained for but was a mere formality or pretense.  Such a sham or 'nominal' consideration does not satisfy the requirement of § 71."  Id. § 79 cmt. d.  Moreover, the Restatement provides an illustration highly relevant for this case: "In consideration of one cent received, A promises to pay $600 in three yearly installments of $200 each.  The one cent is merely nominal and is not consideration for A's promise."  Id. illus. 5.

Both our Supreme Court's decision in Hackett and the Restatement (Second) of Contracts point to a long line of cases holding transactions such as the one here represent a gift.  In Salmon v. Wilson, 41 Cal. 595, 604 (1871), the issue concerned whether one of a man's children took property as separate property from a gift or marital property from a bargained for sale.  The court held it was a gift.  Id. at 605.  Regarding the supposed sale price, the court found the difference "between the price named and the value of the estate . . . is so enormously large as clearly to indicate that the money consideration did not, in fact, enter into the transaction as one of its material elements."  Id. at 606.  See also Oliver v. Grimball, 14 S.C. 556, 567 (1881); Wilkinson v. Sherman, 45 N.J. Eq. 413, 422-23 (1889).[7]  In Aldridge v. Aldridge, 101 S.W. 42, 43 (Mo.

---

[7] In Wilkinson, the court well explained how a document having the form of bargain and sale may actually lack a bargain and represent a gift.  The court stated:

> I fail to perceive why he may not have made this gift to his uncle, and that by an instrument which in form imported that the transaction was purely a matter of bargain and sale.  It is true the consideration in a deed of bargain and sale may be so unconscionably small as to afford in itself evidence of fraud, and demand explanation, but at the same time it may be so merely nominal as to materially aid an explanation that, though in the form of a contract, it was really a gift.  I conceive this to be the office of the deed's nominal consideration here.  One dollar for $10,000 worth of property is so beyond pretence of more than mere formal consideration that its effect on our minds is not merely the suggestion of fraud, but also the exclusion of the idea that bargain

- 15 -

1907), a man purported to sell all his property to his wife and son for ten dollars.  Yet the court

stated:  "Under the circumstances the money consideration named must be considered as

nominal only . . . the transaction was a gift, the element of an ordinary purchase for a valuable

consideration is absent."[8]  Id.  In In re Lynch's Estate, 69 A. 290 (Pa. 1908), a woman acquired

property from her mother for one dollar.  The court held this constituted a gift, stating that "[t]o

hold that a deed from a parent to a child naming a consideration of . . . $1.00 impressed upon it a

grant of bargain and sale would be contrary to the popular understanding of the effect of such a

conveyance, and would in every case defeat the manifest intention."  Id. at 292.  More recently,

in Green v. Green, 542 So. 2d 466, 467 (Fla. Dist. Ct. App. 1989), the court held a husband's

payment of nominal consideration did not alter the effect of a gift of an interest in a residence.

Although the wife argued the nominal consideration made the asset marital property from a sale,

the court disagreed and held:  "[T]he payment of trivial or merely nominal consideration does

not alter the obvious nature of the transaction.  These transfers were gifts . . . ."  Id.  See also

Scott v. Scott, 161 S.W.3d 307, 311-12 (Ark. Ct. App. 2004).[9]

---

> and sale were really intended.  The explanation of this transaction I
> think is apparent.

45 N.J. Eq. at 422-23.

[8] In Geyer v. Bookwalter, 193 F. Supp. 57, 62 (W.D. Mo. 1961), the court cited Aldridge
when it stated that a sale of a house by a wife for one dollar "could be intended . . . as a gift."

[9] Indeed, case law on this subject is clear enough that one commentator, while arguing for
stronger enforcement of peppercorn consideration, noted that the "view that nominal
consideration can be used to support a gratuitous promise . . . simply cannot be maintained in
light of the case law bearing on this subject."  Joseph Siprut, Comment, The Peppercorn
Reconsidered: Why a Promise to Sell Blackacre for Nominal Consideration Is Not Binding, But
Should Be, 97 Nw. U. L. Rev. 1809, 1821 (2003).  Other leading treatises accord with this view.
See 38 Am. Jur. 2d Gifts § 2 (2010) ("A statement that a transfer is for value received will not
alter the nature of a transaction or take away the character of a gift when the consideration
expressed is nominal."); 38A C.J.S. Gifts § 8 (1996) ("A statement that a transfer is for value
received will not alter the nature of the transaction or take away the character of a gift where the

We hold that where nominal consideration and the surrounding circumstances of a contract demonstrate a gift rather than a bargained for sale occurred, the court should find the transaction constitutes a gift.[10]  The party seeking to show a gift has the burden of proof by clear and convincing evidence.  Prizzia v. Prizzia, 58 Va. App. 137, 163, 707 S.E.2d 461, 473 (2011).  However, we emphasize this does not protect imprudent persons from poorly made bargains, for even a peppercorn that is bargained for may constitute consideration.

In this case, the evidence plainly demonstrates a gift from the company to husband.  The corporate minutes from the meeting in 2004 where the company agreed to transfer two hundred shares to husband reflect that husband paid one dollar per share, for a total of two hundred dollars.  Since the company simultaneously agreed to redeem the mother's shares, husband's new stock represented half the company.  As noted above, employing the sale price of half the company from 2003 of $1.5 million dollars, divided by two hundred shares, produces an actual value of $7,500 per share.  If the valuation of the business from the time of trial is used, the stock had an actual value of about eight thousand dollars per share.  We have already found the board of directors, including the sole shareholder mother, regarded the transaction as a gift.  Obviously, no bargained for exchange occurred.  The nominal price paid by husband did not change this transaction from a gift into a sale.

Since no valuable consideration existed and the company intended to make a gift to husband, the two hundred shares he received represented his separate property from a gift under

---

consideration expressed is nominal or trivial, or insignificant as compared with the value of the property transferred . . . .").

[10] We need not consider the extent to which this may apply in other circumstances.  The facts of this case are extreme.

our equitable distribution statute.[11] See Code § 20-107.3(A)(1). This decision makes it unnecessary for us to consider husband's second assignment of error, which addresses the trial court's decision regarding the share of the company wife should receive if the stock is marital.

### B.  Valuation of APS Investments

Husband contends the trial court erred in determining the value of his stock in APS Investments for two reasons. First, he argues it was inappropriate to place a value on APS in the absence of business valuation evidence such as an appraisal or capitalization rates. Second, husband argues the trial court should have considered evidence of a debt APS owed to husband's brother. We find no error regarding the first issue and hold the second not properly before us.

"In Virginia, the courts look to the intrinsic value of the property to the parties to measure value for equitable distribution purposes." Hoebelheinrich v. Hoebelheinrich, 43 Va. App. 543, 550, 600 S.E.2d 152, 155 (2004). Since "intrinsic value must depend on the facts of the case, we give great weight to the findings of the trial court." Howell v. Howell, 31 Va. App. 332, 339, 523 S.E.2d 514, 518 (2000). This Court will "affirm if the evidence supports the findings and if the trial court finds a reasonable evaluation based on proven methodology and on the application of it to the particular facts of the case." Id. "The intrinsic value principle applies to stock in a family owned company." Owens v. Owens, 41 Va. App. 844, 854, 589 S.E.2d 488, 494 (2003).

We find the trial court properly valued APS Investments. The evidence before the trial court was that APS owned a single piece of property and nothing else besides a bank account. Under these circumstances, the trial court acted within its discretion in holding the value of the property and the bank account constituted the value of APS.

---

[11] We do not consider whether any increase in value since the acquisition of the stock is marital or separate. See Code § 20-107.3. We hold only that husband received stock as a gift.

The majority of husband's argument under this assignment of error relates to the failure to reduce the value of APS by the debt to husband's brother. Yet husband cites no authority concerning this. In fact, the only authorities cited under this assignment of error are two cases after the first sentence, which states: "Valuation cannot be based on mere guesswork." In light of the trial court's holding that the value of APS was simply the value of the property and the bank account, which we affirm, we do not perceive how consideration of the debt would require guesswork. Furthermore, nothing in this citation addresses wife's argument that husband failed to prove the liability of APS. Husband's reply brief cites no authority of any kind for this assignment of error.

Rule 5A:20(e) directed that husband's brief contain the "standard of review and the argument (including principles of law and authorities) relating to each assignment of error." Based on this rule, we have repeatedly stated how undeveloped arguments "do not merit appellate consideration." Reid v. Commonwealth, 57 Va. App. 42, 48, 698 S.E.2d 269, 271 (2010) (citation omitted). In Fadness v. Fadness, 52 Va. App. 833, 851, 667 S.E.2d 857, 866 (2008), this Court held: "If the parties believed that the circuit court erred, it was their duty to present that error to us with legal authority to support their contention." Where a party's failure to present authority is significant, we may treat an assignment of error as waived. Parks v. Parks, 52 Va. App. 663, 664, 666 S.E.2d 547, 548 (2008). While we may speculate as to how husband's meager authority relates to his argument, the need for such guesswork on our part necessarily means husband has not complied with the rule. We hold husband's failure to present authority significant and treat this portion of his assignment of error as waived.

## C. Interest Income

Husband maintains the trial court erred in failing to consider the interest income that wife could gain from the monetary award. Husband contends that consideration of this income should

result in a diminished spousal support award. Since we reverse the trial court's equitable distribution finding concerning the gift of Triple S stock, we reverse and remand this issue for further consideration.

Code § 20-107.1(E)(8) requires that in awarding spousal support, the trial court shall consider the "provisions made with regard to the marital property under § 20-107.3." "Because the trial court cannot decide the issues pertaining to permanent spousal support until the equitable distribution issue is resolved, we reverse and remand the trial court's award of spousal support." Duva v. Duva, 55 Va. App. 286, 301, 685 S.E.2d 842, 849 (2009).

### D. Attorney Fees

Both parties seek an award of attorney fees for costs on appeal. As both parties have partially prevailed, we deny any award of fees. See Smith v. Smith, 43 Va. App. 279, 291 n.6, 597 S.E.2d 250, 256 n.6 (2004).

### IV. CONCLUSION

The trial court erred in holding husband's acquisition of half the stock of Triple S was not a gift. The trial court acted properly in determining the value of APS Investments. We remand on the issue of whether the trial court erred in determining spousal support by not considering interest wife may receive from the monetary award in light of our reversal concerning the status of Triple S stock. For the foregoing reasons, the judgment of the trial court is affirmed in part and reversed and remanded in part for further proceedings consistent with this opinion.

Affirmed in part,
reversed and
remanded in part.